## BAIRD v. ST. LOUIS, I. M. & S. RY. Co.

*(Circuit Court, E. D, Arkansas. March 18, 1890.)*

1. CARRIERS OF GOODS—FREIGHT—BILLS OF LADING—STIPULATIONS.
    The act of the general assembly of the state of Arkansas approved February 27, 1885, was not intended to give validity to stipulations in bills of lading which are the result of fraud or mistake.

2. SAME—RATE OF FREIGHT—WEIGHT.
    The material part of a bill of lading on the subject of the freight rate is that which fixes the rate per 100 pounds. Weighing the freight is purely a mechanical process, and may be done at the point of shipment, or at the point of delivery. Where the weight of the merchandise is uniformly the same, the carrier or the consignee may ask to have the weight verified up to the moment of delivery, and it is the weight disclosed by the scales, and not the weight marked on the bill of lading, that controls.

3. CONSTITUTIONAL LAW—INTERSTATE COMMERCE.
    The shipment of merchandise from one state to another is interstate commerce, and any requirement of a state statute in respect of such commerce in conflict with the requirements of the interstate commerce act is of no validity.

*(Syllabus by the Court.)*

At Law.

This is an action of replevin tried before the court on the following agreed statement of facts:

"(1) That the Louisville, New Orleans & Texas Railway Company is a railway corporation of Louisiana doing interstate business, and has a line of railway running from New Orleans, La., to Huntington, Miss. (2) That the St. Louis, Iron Mountain & Southern Railway Company is a railway corporation of Arkansas doing interstate business, and has a railway running from Arkansas City, Ark., to Little Rock. (3) That Huntington, Miss., is on the east bank of the Mississippi river, and Arkansas City, just opposite, is on the west bank; the two terminal points being connected by a steam railway transfer boat belonging to the St. Louis, Iron Mountain & Southern Railway Company. (4) That on August 28, 1889, the Iven & Son Machinery Company, consignors at New Orleans, La., delivered to the Louisville, New Orleans & Texas Railway Company 6 steam cotton presses for transportation from that point to the plaintiff at Little Rock, Ark. (5) That the consignors made out the bill of lading, and inserted therein the weight of said 6 cotton presses at 20,000 pounds. Exhibit A, attached. (6) That, without questioning this weight, or weighing the goods, the Louisville, New Orleans & Texas Railway Company executed and delivered the bill of lading, as made out by the consignors, to them. (7) That after said machinery was aboard of its cars the said Louisville, New Orleans & Texas Railway Company weighed the same, and found that, instead of said 6 presses weighing 20,000 pounds, they actually and in fact weighed 25,550 pounds. (8) That the charges on said machinery were $35, and the rate for the through shipment from New Orleans to Little Rock was 45 cents per 100 pounds. (9) That after weighing the said machinery the Louisville, New Orleans & Texas Railway Company shipped the same over its line to Little Rock via Huntington, Miss., under a billing which showed the true weight, to-wit, 25,550 pounds, and not the weight as inserted in the bill of lading by the consignors. Exhibit B. (10) That on its arrival at Huntington, Miss., the said machinery was turned over to the defendant, the St. Louis, Iron Mountain & Southern Railway Company, under said way-bill, which covered the weight as 25,550 pounds. (11) That defendant then transported said machinery to Little Rock, Ark., over its own road, and, on its arrival, presented its bill for charges and freight at

the rate of 45 cents per 100 pounds upon 25,550 pounds, making the entire freight bill amount to $149.98. (12) That plaintiff, Thomas W. Baird, refused to pay said freight bill and charges, but presented his bill of lading, and offered to pay the charges and freight as shown thereon, according to the weight of 20,000 pounds, at 45 cents per 100 pounds, which equaled the sum of $125, and demanded that, under the statutes of Arkansas, the defendant should protect said bill of lading. (13) That defendant again weighed said machinery, and found that the same weighed over 25,550 pounds, and so informed plaintiff, and demanded that he should pay the freight according to the true weight. This Thomas W. Baird refused to do, whereupon the defendant refused to protect or honor said bill of lading, upon the ground that the weights of the said machinery had been falsely billed by the consignors at 5,550 pounds less than its actual weight; that to deliver the same was in violation of the interstate commerce act, and made the defendant and its agents personally liable to fine and imprisonment for doing so. (14) That thereupon, plaintiff refused to pay according to the true weights, brought this suit, replevied the goods, and now has them in his possession. (15) That the value of said goods is $2,500."

A statute of this state provides:

"Section 1. Be it enacted by the general assembly of the state of Arkansas, that it shall be unlawful for any railroad company in this state, its officers, agents, or employes, to charge and collect, or to endeavor to charge and collect, from the owner, agent, or consignee of any freight, goods, wares, or merchandise, of any kind or character whatever, a greater sum for transporting said freight, goods, wares, and merchandise than is specified in the bill of lading. Sec. 2. That any railroad company, its officers, agents, or employes, having possession of any goods, wares, and merchandise, of any kind or character whatever, shall deliver the same to the owner, his agent or consignee, upon payment of the freight charges as shown by the bill of lading. Sec. 3. That any railroad company, its officers, agents or employes, that shall refuse to deliver to the owner, agent, or consignee any freight, goods, wares, and merchandise, of any kind or character whatever, upon the payment, or tender of payment, of the freight charges due as shown by the bill of lading, the said railroad company shall be liable in damages to the owner of said freight, goods, wares, or merchandise to an amount equal to the amount of the freight charges for every day said freight, goods, wares, and merchandise is held after payment, or tender of payment, of the charges due as shown by the bill of lading, to be recovered in any court of competent jurisdiction." Act Feb. 27, 1885.

*J. M. Rose,* for plaintiff.
*Dodge & Johnson,* for defendant.

CALDWELL, J., (*after stating the facts as above.*) The bill of lading was filled up by the consignors, and signed by the railroad company, on the faith that the consignors had stated truly the weight of the machinery. Either fraudulently or by mistake, the consignors stated the weight of the machinery to be 5,550 pounds less than it was. The contention of the plaintiff is that by a statute of this state he is entitled to profit by this fraud or mistake; that, under the statute, a bill of lading procured by fraud or mistake is as binding and obligatory as one honestly procured. Of course, the statute is not susceptible of such a construction. The statute was passed to prevent fraud, not to promote it;

to punish fraud, not to sanction it. If the bill of lading, by the fraud or mistake of the railroad company, had stated the weight of the machinery to be twice as great as it was, the attitude of the plaintiff would not be what it now is; and yet, if frauds and mistakes in bills of lading are to stand as absolute verity, the rule ought to be mutual, and bind the consignee as well as the carrier. This case, probably, furnishes the first example of a party coming into a court of justice and boldly claiming a benefit from a confessed fraud or mistake. The through rate of freight is stated in the bill of lading to be 45 cents per 100 pounds. That is the material part of the bill of lading on the subject of the freight to be paid for transporting the machinery. In the language of the statute, that is the "sum for transporting said freight * * * specified in the bill of lading." About that there was a contract. There was no contract about the weight of the freight. The weight of the freight is settled by the scales, and not by contract. Bills of lading are frequently issued before the weight of the freight is known. It is not necessary to the issuance of a bill of lading that it should be known. The freight rate is fixed when the rate per 100 pounds is agreed on. Weighing the freight is purely a mechanical process. It may be done at the point of shipment, or at the point of delivery, or both. One hundred pounds in New Orleans is 100 pounds in Little Rock; neither more nor less. Where, as in this case, the weight of the merchandise is uniformly the same, the carrier or the consignee may ask to have the weight verified up to the moment of delivery. It is the weight disclosed by the scales, and not the weight marked on the bill of lading, that controls. The machinery weighed 25,550 pounds, and no agreement of the parties could add to or diminish this weight, nor could it be varied by fraud or by mistake.

But, if the act of the legislature would admit of the construction contended for by plaintiff, it would avail him nothing. The shipment of this freight from New Orleans to Little Rock was interstate commerce, and the act of congress is controlling. It is not necessary to quote that act. It is sufficient to say that if the defendant had delivered, and the plaintiff received, this freight, with knowledge of the facts as they are set out in the agreed statement of facts, the agent of the defendant making the delivery, the plaintiff, and the consignors, if they had knowledge of the facts, would have been guilty of a flagrant violation of the interstate commerce act, and rendered themselves liable to a criminal prosecution. Let judgment be entered for the defendant for a return of the property or its value, and for costs.