VILLAGE OF LOWELLVILLE *v.* THE EAST END
TRACTION CO.

(Decided June 11, 1928.)

*Mr. P. J. Melillo,* for plaintiff.
*Messrs. Harrington, De Ford, Huxley & Smith,* for defendant.

POLLOCK, J. This action comes into this court on appeal from the court of common pleas of Mahoning county. The case was submitted to this court upon the pleadings and an agreed statement of facts.

It appears that, on August 3, 1900, the council of the village of Lowellville passed an ordinance granting a franchise to certain parties named in the ordinance to construct and operate an electric railroad over the streets in that village. This franchise was limited to a term of 25 years from the date of the ordinance. Prior to the expiration of the term, the defendant, the East End Traction Company, became the owner of the franchise, and at the date of its expiration was operating cars over its tracks on Liberty street in said village.

This action is to enjoin the traction company from operating its electric cars over the tracks upon that street, on the ground that there is no franchise or right to use the street for that purpose. The main tracks of the defendant in this village are over Liberty street.

The defendant denies the right of the village to maintain the action without having first secured the consent of the Public Utilities Commission, under the provisions of Sections 504-2 and 504-3 of the General Code, to abandonment of the tracks on this street. Section 504-2 provides, so far as we need to refer to it, as follows:

"No railroad as defined in Section 501 of the General Code, operating any railroad in the state of Ohio, and no public utility as defined in Section 614-2a of the General Code furnishing service or facilities within the state of Ohio, shall abandon or be required to abandon or withdraw any main track or tracks * * * which has once been laid, constructed, opened and used for public business, nor shall be closed for traffic or service thereon, therein or thereover except as provided in Section 504-3."

Section 504-3 provides that an application must be made to the Public Utilities Commission, and permission given by the commission, before any part of the main tracks can be abandoned or closed. This section further provides as follows:

"The provisions of this section shall apply to all such service now rendered and facilities furnished or hereafter built and operated."

The Supreme Court, in the case of *East Ohio Gas Co.* v. *City of Cleveland*, 106 Ohio St., 489, 140 N. E., 410, held that the provision just referred to, "all such services now rendered and facilities furnished," was unconstitutional; that it violated the provisions of a contract that had been made prior to the passage of the act. It is conceded that the ordinance of the village granting the right to operate electric cars over Liberty street was passed prior to the enactment of the section of the General Code above referred to.

The right to operate electric cars over the streets of this village under the ordinance expired on the 4th day of August, 1925, and the franchise was not renewed.

At the expiration of the time limit in the ordi-

nance, the traction company continued to operate its cars over this street. There was no objection made thereto by the village until July 20, 1927, when the village council brought an action similar to the one now under consideration to enjoin the traction company from operating its cars over this street. While that action was pending, the officials of the company and members of the council had a meeting, which resulted in an informal arrangement or understanding by which the traction company was to continue to operate its cars giving half-hourly service.

The contention between the village and the traction company was the frequency of the service that should be rendered.

After that arrangement, the village council passed a resolution withdrawing its former action directing the bringing of the action, and dismissed the suit without prejudice. The traction company continued to operate its cars over this street without interference from the village until just prior to the bringing of the present suit, when there arose the same contention between the railroad company officials and the village council regarding the frequency of service, which resulted in the bringing of this action.

It appears from these facts that the defendant was not operating its cars over Liberty street under any contract made with the village, unless the franchise which expired August 4, 1925, was still binding on both the village and the traction company, by reason of the company continuing to use the streets by operating its cars after the expiration of the franchise.

"After the expiration of a franchise to use the streets, the right of the company to use the street

ceases and also the right of the municipality to demand the service.'' 4 McQuillin on Municipal Corporations (2d Ed.), Section 1785.

The same principle was announced by the Supreme Court of Michigan in the case of *City of Detroit* v. *Detroit United Ry. Co.,* 172 Mich., 136, 137 N. W., 645.

''Where the franchise of a public service corporation expires, the relation thereafter between the parties is no otherwise than that of a corporation engaged in a *quasi* public business for which a franchise is necessary to confer the absolute right. So long as it continues in such business, it is subject to regulation by the state, or the municipality, a subordinate agency of the state.'' *Laighton* v. *City of Carthage,* (C. C.) 175 F., 145, 149. Citing in support of this principle *Gas-Light Co.* v. *City of Zanesville,* 47 Ohio St., 35, 23 N. E., 60; *East Ohio Gas Co.* v. *City of Akron,* 81 Ohio St., 33, 90 N. E., 40, 26 L. R. A. (N. S.), 92, 18 Ann. Cas., 332, and *Munn* v. *Illinois* 94 U. S., 113, 126, 24 L. Ed., 77.

It follows from these authorities that, when the street car company continued to operate its cars over this street after the expiration of the ordinance, without objection from the village, both the traction company and the village were subject to the then existing laws of the state. The village could not maintain an action against the traction company to enjoin it from using the streets in the operation of its electric railroad thereon without the Public Utilities Commission having first consented to the abandonment of the tracks on this street, under the provisions of Sections 504-2 and 504-3 of the General Code.

It is further claimed that the defendant is engaged as a common carrier in interstate commerce, operating an electric railroad from the city of New Castle, in Pennsylvania, in a westerly direction through that state, and continuing through this state to the city of Youngstown, and that it cannot abandon the use of the streets to operate its cars without consent of the Interstate Commerce Commission.

It appears from the agreed statement of facts that the tracks of this defendant company begin in the city of Youngstown and extend to the state line between Ohio and Pennsylvania. The tracks connect with the tracks of another electric road at the state line and continue to the city of New Castle, Pennsylvania. The defendant is furnishing continuous freight and passenger service as a common carrier from the city of New Castle, in Pennsylvania, to the city of Youngstown, in Ohio. It has complied with the provision of the Interstate Commerce Act (Title 49, Section 6, U. S. Code) by filing schedules with the Interstate Commission as required by the federal statutes. It follows that the defendant is engaged in interstate commerce.

The Constitution of the United States, Article I, Section 8, provides that Congress shall have power to regulate and control interstate commerce. Congress, prior to the bringing of this action, had enacted legislation regulating the control of interstate commerce.

Further, the Supreme Court of the United States has held that federal legislation is paramount to any law or regulation of the state Legislature or municipal government. In the case of *Houston, East & West Texas Ry. Co.* v. *United States,* 234 U.

S., 342, 350, 34 S. Ct., 833, 836, 58 L. Ed., 1341, it is said:

"It is unnecessary to repeat what has frequently been said by this court with respect to the complete and paramount character of the power confided to Congress to regulate commerce among the several states: It is of the essence of this power that, where it exists, it dominates. Interstate trade was not left to be destroyed or impaired by the rivalries of local government."

Again on the following page, the court said:

"As it is competent for Congress to legislate to these ends, unquestionably it may seek their attainment by requiring that the agencies of interstate commerce shall not be used in such manner as to cripple, retard, or destroy it. The fact that carriers are instruments of intrastate commerce, as well as of interstate commerce, does not derogate from the complete and paramount authority of Congress over the latter or preclude the federal power from being exerted to prevent the intrastate operations of such carriers from being made a means of injury to that which has been confided to federal care."

In the case of *Baird* v. *St. Louis, I. M. & S. Ry. Co.*, (C. C.), 41 F., 592, it is said:

"The shipment of merchandise from one state to another in interstate commerce, and any requirement of a state statute in respect of such commerce in conflict with the requirements of the interstate commerce act is of no validity."

While the plaintiff in the petition of the case now before us prayed for an injunction restraining the defendant from operating its cars over its tracks on Liberty street, on the ground that the company had

no franchise from the village therefor, yet it is apparent from the agreed statement of facts that the real controversy between the village and the traction company arose out of the refusal of the company to comply with the village's demand for half-hourly service. The railroad track on Liberty street is the only main line of the defendant through said village, and is a part of its interstate-interurban railroad line. To enjoin the defendant from operating cars on Liberty street would interfere with the right of the defendant to engage in interstate commerce as a common carrier of both passengers and freight.

Congress has conferred upon the Interstate Commerce Commission the power of compelling interurban electric railroads engaged in interstate commerce to furnish safe and adequate car service, and the service cannot be changed without first applying to the Commission for permission to make the change. The Commission has provided rules which require railroads engaged in interstate commerce to file schedules of their car service and rates of fare. The defendant, prior to the bringing of this action, had complied with this rule of the Commission by filing with it a schedule of the car service and rates of fare over its line from New Castle, Pennsylvania, to Youngstown, Ohio. If application had been made to the Commission by the plaintiff for car service which it deemed necessary to accommodate the public, the Commission would have had authority to compel the defendant to furnish adequate car service, if the Commission determined that it was not furnishing such service.

The Interstate Commerce Act (Title 49, Section 1 *et seq.*, U. S. Code), requiring safe and adequate

car service, applies to interurban electric railroads engaged in interstate commerce. *United States* v. *Village of Hubbard*, 266 U. S., 474, 45 S. Ct., 160, 69 L. Ed., 389.

When Congress has provided means of obtaining adequate relief by application to the Interstate Commerce Commission, a court of equity will not by injunction cripple, retard, or destroy an interurban electric railroad engaged in interstate commerce, but will leave the complainant to its remedy before the Commission.

An interurban electric railroad engaged in furnishing both passenger and freight service in interstate commerce, with its main track laid in the streets of the village over which its cars engage in interstate commerce, will not be enjoined in an action by the village from operating its cars over the tracks in the streets of the village when the purpose of said action is to force the interurban electric railroad to grant more frequent car service, but the village will be left to its legal remedy before the Interstate Commerce Commission, even if the company has no franchise from the village to operate an electric railroad over the streets of the village. It follows that the injunction must be refused and the petition dismissed.

*Petition dismissed.*

Roberts and Farr, JJ., concur.