ILLINOIS COMMERCE COMMISSION ET·AL. *v.*
UNITED STATES ET AL.

No. 787.   Argued April 30, May 1, 1934.—Decided May 28, 1934.

*Messrs. Luther M. Walter* and *Herbert J. Campbell,* with whom *Mr. Philip Lutz, Jr.,* Attorney General of Indiana, and *Messrs. Herbert J. Patrick,* Deputy Attorney General, *John S. Burchmore,* and *Nuel D. Belnap* were on the brief, for appellants.

*Mr. Daniel W. Knowlton,* with whom *Solicitor General Biggs, Assistant Attorney General Stephens,* and *Messrs. Elmer B. Collins* and *Edward M. Reidy* were on the brief, for the United States and Interstate Commerce Commission.

*Mr. J. N. Davis,* with whom *Messrs. Harry I. Allen, J. R. Barse, P. F. Gault, Walter McFarland, Elmer A. Smith,* and *James Stillwell* were on the brief, for the Alton R. Co. et al., appellees.

MR. JUSTICE STONE delivered the opinion of the Court.

This is an appeal under the Urgent Deficiencies Act of October 22, 1913, c. 32, 38 Stat. 208, 219, 220, from a decree of a District Court for Northern Illinois, three judges sitting, which dismissed the complaint upon which appellants sought to set aside an order of the Interstate Commerce Commission.

The order, made under § 13 (3) (4) of the Interstate Commerce Act, directed the removal of unjust discrimination against interstate commerce, resulting from disparity of the intrastate and interstate switching rates of interstate rail carriers in the Chicago Switching District, lying partly in Illinois and partly in Indiana. It provided that the intrastate rate should be not less than the interstate switching rates prescribed in an earlier order

of the Commission in Switching Rates in the Chicago Switching District, 177 I.C.C. 669, of 3¢ per 100 lbs. for one-line hauls, 3.5¢ for two-line hauls, and 4¢ for three-or-more-line hauls, of carloads of minimum weight of 60,000 lbs. The rates, both interstate and intrastate, which were thus displaced were commodity rates of 2.5¢ per 100 lbs. for one and two-line hauls, and 3¢ for three-or-more-line hauls. The rates are for district intrastate switching movements, having no relation to main line movements. They are chiefly between local industries, involve a complete service originating and terminating within the district, and embrace a loaded and empty car movement and two complete terminal services.

The Commission, of its own motion, began the first proceeding in Switching Rates in the Chicago Switching District, *supra,* in which the carriers, interested shippers, and the state commissions of Illinois and Indiana were parties, and in the course of which extensive hearings were conducted jointly by the Interstate Commerce Commission and the two state commissions. Pending this proceeding, the carriers were directed by the Interstate Commerce Commission to make a cost study of switching movements in the District. This study, which involved the preparation of statistics showing the longest, shortest and average hauls within the District and detailed cost data for selected periods in 1926–1927, was completed and submitted to the Commission and was an important part of the evidence on which it based its decision.

In its report and order, made July 31, 1931, the Commission found the rates which it prescribed for interstate switching service to be reasonable for future application on all commodities shipped within the District, except railway equipment on its own wheels. It also stated that a large percentage of the traffic was intrastate in character, but that the record did not disclose any difference

in the conditions surrounding the handling of the interstate and intrastate movements. It made no order with respect to the intrastate traffic, but expressed the hope that the two state commissions would bring the intrastate rates into harmony with the interstate rates which it had prescribed.

The state commissions failed to prescribe a higher level of intrastate rates, and the carriers of the District, shortly after the new rates became effective, filed with the Interstate Commerce Commission a petition to establish an increased rate for intrastate traffic, whereupon the Commission, on November 2, 1931, reopened the proceeding for further hearing with respect to the relationship of intrastate and interstate rates. A complaint filed with the Commission by numerous shippers attacking the lawfulness of the interstate switching rates was assigned for hearing with the proceeding already pending.

At the hearings, the state commissions in one proceeding and the shippers in the other offered evidence which, by stipulation, was treated as received in both, to show that the interstate switching rates were unreasonably high, and in support of allegations that the cost study made in the first proceeding was defective because of changed conditions. The Commission consolidated the two dockets in one report, and by its report and order of July 3, 1933, 195 I.C.C. 89, assailed here, it dismissed the complaint of the shippers with respect to the interstate rates and placed the intrastate rates on the same basis as the interstate rates already in effect. Before the hearings were closed motions of the state commissions and shippers, appellants here, that a further and more detailed cost study be made, which it was contended would be more representative of the traffic, and which would reflect conditions in 1932, five years after the period selected for study, were denied. The same questions were raised by motions to reopen the proceedings in the two dockets, or

for reargument, to reconsider the cost study, which were also denied.

In the District Court below the case was submitted upon the pleadings, the two reports and orders of the Commission, and certified copies of the evidence and exhibits before the Commission in the second proceeding. The court dismissed the complaint upon findings of fact and law, rejecting the several contentions which appellants make before us.

The scope and application of § 13 (4) have so recently been fully considered in opinions of this Court in *United States* v. *Louisiana,* 290 U.S. 70; *Florida* v. *United States, ante,* p. 1; see also *Georgia Public Service Commn.* v. *United States,* 283 U.S. 765; *Florida* v. *United States,* 282 U.S. 194; that it is unnecessary to repeat that discussion here. Under § 13 (4) of the Interstate Commerce Act, the Interstate Commerce Commission is given plenary power to remove the discrimination created by intrastate rates against interstate commerce, by raising intrastate rates so that the intrastate traffic may produce its fair share of the revenue required to meet maintenance and operating costs and to yield a fair return on the value of property devoted to the transportation service. The question for decision is whether the order of the Commission directing the removal of the discrimination is supported by the findings, based upon substantial evidence.

The numerous objections to the order are grounded for the most part on an elaborate analysis and discussion of the evidence. All have received our attention, but so far as they require our discussion they may be summarized as follows: (1) The order of the Commission is void because of its abuse of discretion in denying the motions for an order requiring that the original cost study be supplemented by a further and more detailed study which would reflect conditions in 1932 and in denying

the petition for reopening the proceedings or reargument for reconsideration of the effect to be given the cost study. (2) The order is not supported by the findings. (3) Certain essential findings are not supported by evidence. (4) The order is too indefinite to be applied.

■ The alleged abuse of discretion by the Commission is not that it refused to consider the contention of appellants as to the sufficiency of the cost study in the light of the facts relied upon, see *Atchison, T. & S. F. Ry. Co.* v. *United States*, 284 U.S. 248, but that it decided these contentions wrongly. There can be no serious doubt that the cost study faithfully represented conditions obtaining during the periods in 1926–1927 selected for study. It was characterized by the Commission as " perhaps more exhaustive " than any previously undertaken in proceedings involving switching charges. To the seven carriers of the thirty-five serving the District, originally chosen for study during selected periods, eight others were added on the initiative of the Commission. A request of certain of the appellants that the Chicago Junction Railway be included in the study was denied, the Commission pointing out in both reports that because of the short hauls on this line it did not regard the traffic as representative. Appellants urge specifically that if all the lines in the District were not to be included, this line should have been, in order to make the study fairly representative; but the Commission considered the issue of fact so raised and decided to the contrary.

The principal contention is that conditions since 1927 had so changed that a new study should have been made. The changes emphasized are (1) falling off in volume of traffic; (2) improvement of highways in the District resulting in diversion of traffic from the rail lines for movement by truck; (3) the decline in value of many of the articles transported; (4) reduction in wages and cost of supplies; and (5) curtailment of the amount of service rendered by

carriers to industries within the District. In considering these changes on the basis of the data already in the record, the Commission pointed out that they had resulted in increased unit costs because unaccompanied by a corresponding or proportionate decrease in operating expense. It also concluded, upon the basis of data before it, that in view of the improvement of highways and trucking facilities and other changes in conditions affecting traffic the Commission could not, even though it were its duty to do so, provide a rate which would enable the railroads to compete successfully with trucking movements, by which the traffic had been diverted. The Commission decided that, on the record before it, it was able to consider the effect of the factors suggested by appellants and that a new cost study was unnecessary.

Whether or not the cost study was representative, whether the study should have been more refined, and whether it should have been supplemented as appellants desired, are questions of fact, the determination of which is within the competence of the Commission. The Commission reached its conclusion after full hearing and thorough consideration of all questions presented. As the record affords a sufficient basis for the Commission's determination, it is not subject to review in the courts. See *Manufacturers Ry. Co.* v. *United States,* 246 U.S. 457, 481; *Assigned Car Cases,* 274 U.S. 564, 580.

■ The Commission's findings are to be read in the light of traffic conditions, fully disclosed in the evidence and described in the Commission's report. The Chicago Switching District comprises an area of more than 600 square miles, served by thirty-five railroads, which maintain there more than 5,000 miles of track, serving 4,000 private industries. The District is essentially a unit, so far as switching movements are concerned. Interstate and intrastate traffic are commingled in switching movements and handled in the same manner indiscriminately,

often in the same trains and by the same crews. As already noted, the movements have no relation to main line hauls, are chiefly between local industries, involve a complete service originating and terminating within the District, a loaded and empty car movement, and two complete terminal services.

In the original proceeding, no party took the position that a rate should apply on intrastate traffic within the District different from that applied to interstate traffic, the only substantial issue being whether the rates finally adopted and applied to interstate traffic were too high. In the second proceeding, after considering and stating at length the evidence showing the effect upon interstate commerce of the lower rates prevailing upon intrastate traffic of the same general character, and the probable effect in an increased return to the carriers if the intrastate rate were raised to the interstate level, the Commission found that the transportation conditions throughout the Chicago Switching District are substantially similar; that they are no more favorable to interstate movements than to intrastate movements within the District; that the established interstate scale of rates was reasonable and not shown, when applied intrastate, to have or cause any undue preference and advantage to the persons or localities in intrastate commerce, or any undue preference and advantage to persons and localities in interstate commerce; that the lower intrastate rates had resulted and would for the future result in unjust discrimination against interstate commerce. The report dealt at length with the evidence showing probable increase in revenue which would result if the intrastate rates were raised to the interstate level; comparisons based on the recorded traffic in 1926 and in November, 1931, and January, 1932, indicated a loss of revenue by the maintenance of the lower intrastate rate in excess of $1,000,000. These findings, which are supported by detailed subsidiary findings

in the report, are ample to support the order. *Florida* v. *United States, ante,* p. 1. They disclose no such defects as were found in *Florida* v. *United States,* 282 U.S. 194, or urged in *United States* v. *Louisiana, supra.*

Specific objections to the sufficiency of the findings, so far as they are not already disposed of by what has been said, are that there is no finding that the intrastate rates, before the increase, were less than maximum reasonable rates, and there was no finding which separated interstate and intrastate property, revenues and expenses of the carriers so as to make it possible to compare revenues with cost for the two classes of traffic considered separately. But these objections, and others which we need not stop to consider in detail, leave out of account the nature of the traffic and the significance of the principal and subsidiary findings showing that the conditions throughout the District were substantially the same for both classes of traffic, which were handled in the same manner. The inquiry in both proceedings was directed to the commerce of the District as a unit. The decision in the first proceeding, that the increase in interstate rates was reasonable, was made in the hope that the state commissions would bring intrastate rates into harmony. When they failed to do so, the Commission reaffirmed its finding that the new interstate rates were reasonable and found that the intrastate rates must be raised in order that the intrastate traffic may bear its fair share of the revenue burden. It is plain from the nature of the inquiry that the rate level, to which both classes of traffic were raised, was found reasonable on the basis of the traffic as a whole. Where the conditions under which interstate and intrastate traffic move are found to be substantially the same with respect to all factors bearing on the reasonableness of the rate, and the two classes are shown to be intimately bound together, there is no occasion to deal with the reasonableness of the intrastate

rates more specifically, or to separate intrastate and interstate costs and revenues. Compare *American Express Co.* v. *Caldwell,* 244 U.S. 617; *United States* v. *Louisiana, supra; Florida* v. *United States, ante,* p. 1.

■ Appellants contend there is no evidence in the record to support the Commission's findings that the prescribed interstate rate was reasonable or that after the increase in that rate the old intrastate rate unjustly discriminated against interstate commerce. Appellants reach their conclusion as to the reasonableness of the interstate rate by disregarding the cost study as evidence because, as is contended, it was erroneously considered by the Commission. But as we have already said it was for the Commission to determine whether the cost study was adequate or whether it was necessary to refine or supplement it in order to make it dependable evidence for the purpose of rate making. The study itself afforded evidence of the reasonableness of the rate fixed, and upon the whole record there was abundant support for the Commission's finding, which was carefully and thoroughly considered in its report. There is no basis upon which the courts, not authorized to weigh evidence, could reëxamine or disregard its conclusion.

The increased intrastate rate applied to grain, to which specific objection is made, does not stand on a different footing. This objection is also predicated upon the mistaken assumption that the Commission should have disregarded the cost study and traffic analysis as evidence. It is true that the rates on grain were not included in the all-commodity rate prevailing in the District before the first proceeding was initiated, and were not uniform throughout the District, but the proceeding was reopened by the Commission to investigate the lawfulness of " all rates and charges . . . of all carload traffic " interstate, and their relationship to like rates and charges intrastate.

It acted upon a record showing that the grain moved intra-District, under the same conditions as other commodities, and the Commission had before it evidence showing that the cost of the traffic largely exceeded the revenue derived from the old rates and that a rate on a distance or zoning basis was impracticable.

Similarly, the finding of unjust discrimination against interstate commerce made in the second report rests upon evidence. The effect of maintaining a lower rate, intrastate, than the reasonable interstate rate is necessarily discriminatory wherever the two classes of traffic, inextricably intermingled, are carried on, as in the District, under substantially the same conditions. Compare *United States* v. *Louisiana, supra.* Moreover, it appeared that many of the railroads cannot move traffic between points of origin and destination in Indiana and between points of origin and destination in Illinois without crossing the state line, and thus subjecting the shippers to the interstate rate; that some of the industries are located on both sides of the state line and that some of the assembling yards and interchange tracks overlap state lines. On the other hand, many industries, in preference to a more direct interstate route, resort to intrastate routes to obtain lower rates, although they are so-called "unnatural" routes, against the flow of traffic, and therefore entail additional expense in handling. Evidence to show the extent of the burden upon the carriers' revenues, and the diversion of traffic from interstate to "unnatural" intrastate movements, is found both in the testimony of the carrier witnesses and in exhibits of record.

Appellants recur to their criticism of the cost study and insist that in view of differences between average lengths of haul in intrastate and in interstate movements, costs and revenues intrastate and interstate should have been segregated. But this objection is directed not only to the conclusion of the Commission, already con-

sidered, that the cost study was representative and dependable evidence, but is based upon the assumption that the Commission should disregard the long history of rates in the Switching District, in the course of which a commodity rate, generally applicable without regard to distance, had been built up through the District, and that upon a review of the evidence we are free to reject the Commission's conclusion that a distance or zone rate should not apply. Upon this subject there was substantial evidence supporting the reasonableness of uniform commodity rates in preference to a distance or zone rate. So far as this objection is of any force it goes only to the weight of the evidence and not to the want of it. Treating an area as a unit and applying a uniform blanket or group rate within it, as is the common practice with respect to switching rates, is within the competence of the Commission. See *St. Louis Southwestern Ry. Co.* v. *United States,* 245 U.S. 136, 138, Note 1, 141; *United States* v. *Illinois Central R. Co.,* 263 U.S. 515, 518, Note 1; *Virginian Ry. Co.* v. *United States,* 272 U.S. 658, 660, 664.

■ Appellants contend that the order cannot be applied to certain carriers whose rails extend only into the Illinois section of the District. As in terms it directs that intrastate rates be established on the level of the interstate switching rates maintained by the carriers who are parties to the proceeding, it is said to be inapplicable to those carriers which because they do not cross state lines in their switching operations have filed no interstate switching rates. But we think the order is not to be read so narrowly. It is made applicable to all the carriers in the District and directs that the intrastate switching rates shall be maintained on a parity with the interstate rates " contemporaneously applied by the said carriers." On its face it would seem that the quoted phrase was intended only to describe the intrastate rates

maintained by such of the carriers as had occasion to establish interstate switching rates. But if this were doubtful the order is to be read with the report. *Georgia Public Service Comm'n* v. *United States, supra,* 771; *American Express Co.* v. *Caldwell, supra,* 627. So read there can be no doubt that it was intended to prescribe for all intrastate traffic within the District the same rate as that prescribed for all interstate traffic there, and that interstate carriers whose rails are confined to either state and which for that reason have filed no interstate switching rates are nevertheless required to adopt the prescribed intrastate rate.

Appellants also urge that interstate carriers whose rails reach only the Illinois part of the District cannot be required to remove a discrimination against interstate commerce unless they participate in both the prejudicial and preferential rates, as was said in *Texas & Pacific Ry. Co.* v. *United States,* 289 U.S. 627, with respect to discriminations between localities forbidden by § 3 of the Act. But this restriction has no relevance to proceedings under § 13 (4) directed to the removal of discriminatory intrastate rates maintained by state authority. By that section the Interstate Commerce Commission is expressly authorized to prescribe the intrastate rates which will remove the discrimination. *Affirmed.*