## MICHIGAN BELL TELEPHONE CO. *v.* MICHIGAN PUBLIC UTILITIES COMMISSION.

1. TELEGRAPHS AND TELEPHONES—PUBLIC UTILITIES COMMISSION—STATUTES—COMPLAINTS—BURDEN OF PROOF.

    Under statutes empowering the public utilities commission to hear and determine all complaints against the practices, rates, tolls, rentals or charges by telephone corporations where the commission makes an order relative to toll rates, telephone company which makes complaint thereof has the burden of proof to show by clear and satisfactory evidence that the order of the commission is unlawful and unreasonable (2 Comp. Laws 1929, § 11700 *et seq.*).

2. SAME—SCOPE OF COMMISSION'S INQUIRY—INTRASTATE TOLL RATES—EVIDENCE.

    The public utilities commission, in undertaking consideration of intrastate message toll charges on its own motion, was only required to determine upon competent evidence that the rates charged for such service were excessive or discriminatory and could limit its inquiry to that particular branch of the service, providing evidence was adduced to sustain its findings (2 Comp. Laws 1929, § 11700 *et seq.*).

3. SAME—VALIDITY OF RATES—SEGREGATION OF ASSETS.

    A determination of the value of a telephone company's property used in intrastate business, segregated from the property used in the interstate business, is a proper basis for determining the validity of an order as to rates when confiscation is charged.

4. SAME—PUBLIC UTILITIES COMMISSION—REVIEW OF ORDERS—INTRASTATE TOLL RATE SCHEDULE—EVIDENCE.

    On appeal from circuit court's decree dismissing telephone company's bill to set aside an order of the public utilities commission reducing intrastate toll rate schedule to the same level charged and established for interstate toll rates, findings of commission forming basis for its order *held*, supported by competent evidence (2 Comp. Laws 1929, § 11700 *et seq.*).

5. SAME—PUBLIC UTILITIES COMMISSION—INTRASTATE TOLL RATES—
REVIEW OF ORDERS—EVIDENCE.

Upon review of order of the public utilities commission fixing
intrastate telephone rates, the commission's order will stand
if there is substantial evidence supporting the conclusions
of the commission (2 Comp. Laws 1929, § 11700 *et seq.*).

6. SAME—INTERSTATE TOLL RATES ASSUMED REASONABLE.

Upon Supreme Court's review of decree of circuit court dis-
missing telephone company's bill to set aside order of public
utilities commission reducing intrastate toll rate schedule to
same basis as schedule for interstate toll rates, Supreme Court
must assume that the rates established by the Federal com-
munications commission for interstate tolls are fair and reason-
able (2 Comp. Laws 1929, § 11700 *et seq.*).

7. CONSTITUTIONAL LAW—DUE PROCESS—TELEPHONE RATES.

Under statute empowering public utilities commission to inquire
into the reasonableness of rates charged by the telephone com-
pany for any class of its service, where company was served
with an order informing it of the nature of the complaint
made concerning its tolls for intrastate long distance service,
was accorded a hearing before the commission, an order was
thereafter entered establishing a new rate schedule based upon
competent evidence, and the company appealed in the manner
provided by statute, the company was not denied due process
of law, notwithstanding claim there may have been a change
of method in rate fixing adopted by the commission (U. S.
Const. Am. 14; 2 Comp. Laws 1929, § 11700 *et seq.*).

Per SHARPE, C. J., and BUSHNELL, CHANDLER, NORTH, MC-
ALLISTER, and WIEST, JJ.

8. SAME—DISSIMILARITY BETWEEN INTERSTATE AND INTRASTATE TOLL
RATES—RETURN ON INVESTMENT.

Decree dismissing telephone company's bill to set aside order of
public utilities commission requiring that schedule of intra-
state toll rates be reduced to the same basis as its schedule
for interstate toll rates is affirmed where the company not
only failed to prove a substantial dissimilarity between the
services warranting a discrimination in the charges for the
respective services but also failed to show that under the order
it would not receive a reasonable compensatory return on its
entire investment (2 Comp. Laws 1929, § 11700 *et seq.*).

Per BUSHNELL, CHANDLER, MCALLISTER, and BUTZEL, JJ.

Appeal from Ingham; Carr (Leland W.), J. Submitted June 18, 1940. (Docket No. 54, Calendar No. 40,907.) Decided April 8, 1941.

Bill by Michigan Bell Telephone Company to review, vacate, and set aside an order made by the Michigan Public Utilities Commission in respect to intrastate toll rates. From decree of dismissal, plaintiff appeals. Affirmed.

*Thomas G. Long, Karl F. Oehler,* and *Butzel, Eaman, Long, Gust & Bills,* for plaintiff.

*Thomas Read,* Attorney General, and *Edmund E. Shepherd* and *James W. Williams,* Assistants Attorney General, for defendant.

SHARPE, J. This is an appeal from a final decree dismissing a bill of complaint filed by plaintiff to review, vacate, and set aside an order made by the Michigan public utilities commission * in respect to intrastate toll rates charged by the Michigan Bell Telephone Company within this State.

On March 24, 1938, the Michigan public utilities commission, upon its own motion, undertook consideration of the message toll charges of the telephone company rendered within the State; and instituted an investigation concerning reported unreasonable, excessive and unjust rates imposed upon the public for toll service between various Michigan points, which charges were reported to be discriminatory

---

* The powers and duties of the Michigan public utilities commission were transferred to the Michigan public service commission by Act No. 3, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 11017–1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 22.13 [1] *et seq.*), and the utilities commission abolished, effective February 15, 1939.—RE-PORTER.

when compared with interstate message toll rates maintained between Michigan and out-of-State points by the Michigan Bell Telephone Company and the American Telephone & Telegraph Company.

The commission issued an order directed to the Michigan Bell Telephone Company to show cause why the commission should not enter an order requiring the company to cease from the collection of unjust charges for intrastate toll message service and reduce its intrastate message toll rate schedule to the same basis and measure as provided in the interstate toll-rate schedule. The order recited that the telephone company was required by the provisions of Act No. 206, Pub. Acts 1913, as amended,[*] to collect and enforce for services rendered only such charges as would be reasonable and just; and that the telephone company was prohibited from charging, collecting, or receiving from any person or persons greater or less compensation for any service rendered than it charges, demands, collects or receives from any other person for rendering, furnishing or performing for him or them a like or contemporaneous service.

Upon the issuance of the above order, the telephone company filed an answer denying that such discrimination existed and averred that the commission was without jurisdiction in the premises; that the rates for intrastate toll telephone service were just and reasonable; that the commission in 1926 and 1936 had established reasonable rates for exchange and toll services; and that in the proceedings of June 1, 1926, and July 1, 1936, all the property of the company devoted to the rendition of intrastate telephone service within the State of

---

[*] See 2 Comp. Laws 1929, §§ 11700–11725 (Stat. Ann. §§ 22.1441–22.1466).—REPORTER.

Michigan and all its services therein were considered as a unit for the purpose of rate making and any action on the part of the commission in reducing rates and charges for intrastate telephone service without a consideration of the necessity of affording the telephone company an opportunity to earn a compensatory return on its entire property is a denial of due process of law.

The commission held a hearing commencing April 26, 1938, at which time the telephone company offered no testimony in respect to its revenue nor did it offer evidence to sustain the theory that a substantial reduction of its intrastate toll rates would lead to confiscation of its property without due process of law.

On June 27, 1938, the commission entered the following order:

"Therefore, it is ordered that—

"1. Effective 12:01 a.m. August 1, 1938, the intrastate toll message rates of the Michigan Bell Telephone Company, including station-to-station and person-to-person, both day, night and Sunday rates and report charges be reduced to the same rate level charged and established by the said American Telephone & Telegraph Company and Michigan Bell Telephone Company under their established rate and mileage schedule for message toll telephone service interstate from and to points within Michigan limits for similar classes of service.

"2. Within a reasonable period following receipt of the certified copy of this order, but not later than July 20, 1938, the Michigan Bell Telephone Company shall make and file with this commission its telephone tariff modifications to comply with this order.

"3. This commission hereby specifically reserves unto itself jurisdiction of this matter and the right to make such other or further order or orders herein as shall be deemed necessary and advisable."

The reasons and grounds for entering of the above order as stated in the opinion of the commission are as follows:

"The Michigan Bell Telephone Company, hereinafter called the 'Bell,' is engaged in the conduct of telephone business in the State of Michigan, as a corporation organized under the laws of this State, with a capital stock of 1,250,000 shares of which 1,249,900 shares at least, are owned by the American Telephone & Telegraph Company, a corporation organized under the laws of the State of New York, having its principal headquarters at 195 Broadway, New York City, New York, which company is hereinafter designated 'Long Lines Company.' The latter actually has the direct control of the Bell through the foregoing stock ownership, and, as heretofore determined by the Michigan Supreme Court in *People, ex rel. Attorney General,* v. *Michigan Bell Telephone Company,* 246 Mich. 198 (P. U. R. 1929B, 455; P. U. R. 1929E, 27), the Bell is so organized and controlled by the Long Lines Company as to constitute the Bell the mere instrumentality or agent or adjunct of the Long Lines Company so that the separate existence of the two corporate entities must be ignored and the two corporations considered, for regulatory purposes, as but a single company."

Additional finding of facts as stated in the opinion are as follows:

"(a) The Michigan Bell Telephone Company is the mere adjunct, instrumentality and device of the American Telephone & Telegraph Company, a New York corporation, by which latter substantially all of the Bell Company's capital stock is entirely owned, and its business and affairs wholly dominated and controlled, and that said companies together constitute but a single telephone utility, which is subject in its intrastate business and functions within Michigan to the regulatory control of this commission.

"(b) That said utility in rendering and furnishing an intrastate toll message telephone service within the State of Michigan furnishes a service which is like and contemporaneous to that furnished by said utility in the interstate transmission of telephone long distance messages to and from points within Michigan limits, for which intrastate service said utility charges, demands, collects and receives from its patrons a greater rate of compensation than charged, demanded, collected or received from patrons for such interstate toll message service.

"(c) Said utility in its continued practice of charging different and higher rates for toll message service over distances of more than 42 miles within the State of Michigan than charged for comparable distances between points in Michigan and points in other States is an unreasonable and unjust discrimination under the provisions of Act No. 206, Pub. Acts 1913, as amended; that said practice is unduly prejudicial to patrons utilizing intrastate message service and unduly preferential to patrons utilizing interstate message service to the extent that said intrastate message tolls exceed or may exceed message toll rates constructed on the same basis as the interstate message tolls for the same or comparable distances."

On July 7, 1938, the Michigan Bell Telephone Company filed its bill of complaint in the circuit court of Ingham county, in chancery, to review, vacate and set aside the commission's order as not being in accordance with the law or just rights of plaintiff. It is the claim of the telephone company that the order of June 27, 1938, is without competent evidence to support it, is contrary to the evidence produced, arbitrary, and denies to plaintiff due process of law in violation of the 14th amendment to the Constitution of the United States.

Upon the filing of plaintiff's bill of complaint, the

trial court ordered defendant commission to show cause why an interlocutory injunction should not issue, and on July 15, 1938, a writ was issued, restraining and enjoining the commission from taking any proceeding to enforce the order of the commission entered June 27, 1938.

The trial court rendered an opinion in which he stated:

"Essentially, the proceeding was an inquiry into the intrastate toll charges of the plaintiff company; and the conclusions of the commission were predicated on the record as made, rather than on any alleged failure of the plaintiff to make the showing, in terms, indicated by the initial order.   *   *   * The order actually goes far beyond the matter of alleged discrimination and in substance and effect it should be regarded as one for the fixing of intrastate toll rates. It will be noted that plaintiff was not merely required to obviate the alleged discrimination but rather was directed to place its intrastate schedules on the same basis as that pertaining to its interstate business, for similar classes of service. *   *   *

"In the proceeding here involved the commission determined that the two services rendered by plaintiff, that is, the interstate and the intrastate, were and are subject to similar considerations as to details and costs of operation. It was assumed that the interstate charges were reasonable, such assumption or conclusion being predicated on the fact that they had been duly established by the Federal communications commission and acquiesced, or concurred, in by plaintiff. As a practical proposition I do not understand that any claim is made on behalf of plaintiff that the interstate rates as so fixed are not reasonable. It is insisted that the commission was in error in deciding, on the basis of the showing made before it, that the two branches of the service

may properly be said to be furnished under substantially identical conditions. I am brought to the conclusion, however, that the proofs reasonably support this determination. There may be some significance in the fact that in 1926, and prior thereto, the rate schedules in the intrastate and interstate rested on the same basis.

"I do not think it can be said that the commission, in proceeding on the theory suggested, acted wholly without authority. The decision of the Supreme Court in *Illinois Commerce Commission* v. *United States*, 292 U. S. 474 (54 Sup. Ct. 783, 78 L. Ed. 1371), must be regarded as establishing that such method is, under some circumstances, permissible. Defendant, and its predecessor, obviously concluded that the record in this case presented a situation justifying its acceptance. Whether the basis for the conclusion reached was less satisfactory than would have been presented by following the customary method observed in rate-making proceedings need not be specifically determined. The plaintiff herein had the right, before the commission and on the trial in this court, to offer such proofs as it desired. It has not elected, however, to supply any basis for an affirmative conclusion but relies on the claim that the commission was without jurisdiction to take action on the proofs submitted in connection with the commission's theory. It occurs to me that plaintiff is in somewhat the same position as was the railroad company in *Detroit & Mackinac R. Co.* v. *Michigan Railroad Commission*, 171 Mich. 335.

"Under the provisions of the statute pertaining to the matter of appeal, the burden rests on the plaintiff of establishing by clear and satisfactory evidence that the order by which it claims to have been aggrieved is unlawful or unreasonable. As before suggested, I am brought to the conclusion that it cannot be said, as counsel for plaintiff insist, that the commission acted wholly without jurisdiction to make the order and that it is for that reason unlawful. No attempt has been made to establish

that it actually is confiscatory in the sense that it would deprive the plaintiff of a proper return on the value of its property devoted to the service. On the record as made it must be said that plaintiff has not established, with the requisite degree of certainty, its right to the relief sought.''

A decree was entered in conformity with the trial court's opinion.

Plaintiff appeals and contends that the order of June 27, 1938, should be set aside because:

(1) If the order be regarded as made solely in the exercise of the power to remove discrimination it is (a) beyond the power conferred on the commission by the Michigan statute which power is limited to elimination of discrimination pertaining to intrastate operations solely; (b) inclusive of rates which are not competitive and hence discrimination cannot exist in respect thereof.

(2) Whether the order is regarded as made in the exercise of the power to remove discrimination or to make rates by comparison or both it is (a) arbitrary and unreasonable in excluding in substance from any real consideration the many facts and circumstances as to the dissimilarities in the rendering of interstate service and intrastate service and hence in violation of section 1 of the 14th amendment to the Constitution of the United States; (b) without substantial testimony to support it inasmuch as the evidence showing many and weighty dissimilarities of conditions is not conflicting and there is no countervailing evidence and hence the order exceeds the authority of the commission under the Michigan statutes which is to hear evidence and act thereon and is violative of the due process of the 14th amendment to the Constitution of the United States; (c) not made ''with reference exclusively to what is just and reasonable as between the carrier

and the public in respect of domestic business" but takes the interstate business into consideration as well and hence is violative of the 14th amendment to the Constitution of the United States; (d) a sudden shift or departure from the basis heretofore consistently and continuously adopted and pursued by defendant commission in the regulation of the business and rates of plaintiff treating all business in Michigan as a whole and fixing intrastate toll rates to produce more than the intended return from the intrastate business as a whole and the exchange rates correspondingly less and hence is violative of the due process clause of the 14th amendment to the Constitution of the United States.

It is contended on the part of the commission that the legislature possesses sovereign power to fix rates for public utilities and to prevent unjust discrimination in rates charged; that such legislative power has been expressly delegated to the commission, a fact-finding body; that under the proceedings taken by the commission the telephone company was afforded a full opportunity to a hearing and later a judicial review of those proceedings; that the rate established is not so low as to amount to confiscation of the telephone company's property; and that the findings of the commission are supported by competent evidence.

In our opinion the principal question involved in this case is to determine whether the findings of the commission are supported by competent evidence.

The sections of the so-called telephone act (Act No. 206, Pub. Acts 1913, being 2 Comp. Laws 1929, § 11700 *et seq.* [Stat. Ann. § 22.1441 *et seq.*]) applicable to the present problem are as follows:

"Sec. 3. All persons, copartnerships or corporations doing a telephone business within this State are required to furnish reasonably adequate service

and facilities for the use of their lines by the public. All charges made for any service rendered, furnished, or performed, or to be rendered, furnished or performed within the State by any telephone company shall be reasonable and just, and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful; and the commission shall have power to make, alter, amend or abolish any rate or charge for any service, and may regulate by rules or orders any service or facility; and it shall likewise prescribe the standard of construction and equipment that shall be maintained by any person, copartnership or corporation maintaining a physical connection between the lines and facilities of any such person, copartnership or corporation, and the lines and facilities of any other person, copartnership or corporation.

"SEC. 4. If any telephone company doing business within this State shall directly or indirectly by any special rate, rebate, drawback or other device, charge, demand, collect or receive from any person, copartnership or corporation a greater or less compensation for any service rendered, furnished or performed than it charges, demands, collects or receives from any other person or persons, copartnership or corporation for rendering, furnishing or performing for him or them a like contemporaneous service, such telephone company shall be guilty of unjust discrimination which is hereby prohibited and declared to be unlawful. * * *

"SEC. 5. It shall be unlawful for any telephone corporation doing business within this State to make or give any preference or advantage to any person, copartnership, corporation or locality or subject any person, copartnership, corporation or locality to any prejudice or disadvantage in any respect whatever. * * *

"SEC. 11. The commission shall, acting upon its own motion * * * have authority to hear and determine all complaints against the practices, rates, tolls, rentals or charges * * * by persons, co-

partnerships or corporations within the terms of this act.    *    *    *

"SEC. 14. Any telephone company or other party in interest, being dissatisfied with any final order of the commission made in any proceeding under this act, may within thirty days from the issuance of such order and notice thereof, commence an action in the circuit court in chancery against the commission as defendant to vacate and set aside any such order on the ground that    *    *    *    the rate or rates, charges, joint rate or rates fixed are unlawful or unreasonable.    *    *    *

"SEC. 18. In all actions under this section the burden of proof shall be upon the complainant to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable as the case may be."

Under section 18, *supra*, the burden of proof is upon the telephone company to show that the order of the commission is unlawful and unreasonable. In our opinion the commission was only required to determine upon competent evidence that the rates charged for intrastate toll service were excessive or discriminatory and it could limit its inquiry to that particular branch of the service, providing evidence was adduced to sustain its findings.

At the hearing before the commission, nearly all the evidence introduced by the telephone company related to differences in the rendition of interstate and intrastate service. It introduced evidence tending to show that in 1937 the average revenue per message from interstate business was $1.555 and from intrastate business $.318; that approximately 80 per cent. of the Michigan Bell Telephone Company's intrastate business is between termini less than 42 miles apart; that but one and one-half per cent. of the Long Lines interstate business is under 42 miles; that during this same period the average

rate miles per message were 228 miles for interstate messages and 30.9 miles for intrastate messages; that the charges for station-to-station day messages of three minutes duration transmitted these distances are $.90 in the case of the interstate and $.30 in the case of the intrastate; that the duration of the call on interstate messages is greater than that of intrastate messages; and that these are factors which enter into the revenue derived from a given schedule of rates.

It was also shown by the telephone company that the use made of the circuit is an important factor in determining a rate schedule; that during the year 1937 the Long Lines handled 54,000,000 messages entailing 223,368,000 minutes of conversation time, while during the same period the Michigan Bell Telephone Company transmitted 27,000,000 messages, both intrastate and interstate, involving 81,540,000 minutes of conversation; that the circuit cost per mile is not the same for the interstate circuits as for the intrastate circuits because as the size of circuit groups increase, the cost per circuit tends to decrease; and that the revenue of the Long Lines from "other than telephone uses" is $14,851,013 as against $74,334,314 from telephone uses, while that of the Michigan Bell Telephone Company for the same period is $170,037 as against $7,754,827.

Evidence was introduced upon the part of the commission by a telephone engineer employed by the commission; a toll traffic supervisor, a telephone transmission engineer, a telephone revenue engineer and an auditor employed by the telephone company; and several telephone patrons as well as an exhibit of the comparable rates which shows that the interstate and intrastate rates are the same up to and including 42 miles of service and that from then on the intrastate rates are consistently higher.

A recent case of much importance is that of *Bell Telephone Co.* v. *Pennsylvania Public Utility Commission,* 135 Pa. Super. 218 (5 Atl. [2d] 410), dismissed on appeal 309 U. S. 30 (60 Sup. Ct. 411, 84 L. Ed. 563). That case involved an appeal by the telephone company from an order of the Pennsylvania public utility commission directing it to revise its intrastate toll rates for distances exceeding 36 miles so as to conform to the rates charged by the American Telephone & Telegraph Company which was a user of the Pennsylvania Bell Telephone Company's facilities for service over comparable distances in interstate service. The facts in the above case are almost identical to the facts involved in the case at bar. There was almost identical evidence to support the finding of similarity between the interstate and intrastate service in the two cases. It consisted in a showing that for the use of the same facilities, the customer who uses them in intrastate toll service must pay more than the customer who uses them in interstate toll service. The court said (135 Pa. Sup. 235, 236):

"If the interstate rates are themselves just and reasonable and are not below the fair and reasonable rate demandable for the service, by reason of some special circumstance such as was present in the *Eubank Case,** it is hard to see how there can be any discrimination against interstate traffic and in favor of intrastate traffic by an order of a State commission directing intrastate rates to conform to interstate rates.  *  *  *

"We must assume, in the absence of all proof to the contrary, that the rates so established by the American Company and approved by the Federal communications commission are just, fair and reasonable to the utilities as well as to the public.  *  *  *

* *Louisville & N. R. Co.* v. *Eubank,* 184 U. S. 27 (22 Sup. Ct. 277, 46 L. Ed. 416).—REPORTER.

"Nor is the order invalid because it is not alternative in form, directing appellant either to raise its interstate rates or lower its intrastate rates, to conform.   *   *   *

"If an unjust and unreasonable discrimination against intrastate service exists, which can be corrected only by a reduction of the intrastate rates to conform with the just and reasonable rates established for interstate service, the public utility commission has the power to order it."

As we examine the facts in the case at bar, it is apparent that plaintiff, in making a comparison of the various items that go towards the making of rates, compares the whole nation-wide business of the Long Lines to the intrastate business of the Michigan Bell Telephone Company, while the comparison the commission made was between the interstate business (jointly conducted by the Michigan Bell Telephone Company and the Long Lines to and from points within Michigan limits) and the intrastate business conducted by the Michigan Bell Telephone Company. The fact that the volume, use of economical appliances, density of traffic, et cetera, of the Long Lines are different from the same factors in the Michigan Bell Telephone Company business does not meet a claim that the interstate business of the Michigan Bell Telephone Company is rendered under the same conditions as the intrastate business of the Michigan Bell Telephone Company. In its showing, the plaintiff does not show that the advantages possessed by the Long Lines are beneficial to the Michigan Bell Telephone Company. In our opinion plaintiff has failed to show any substantial difference between the interstate business of the Michigan Bell Telephone Company (conducted jointly with the Long Lines) and its intrastate business.

Plaintiff cites the case of *Smith* v. *Illinois Bell Telephone Company,* 282 U. S. 133 (51 Sup. Ct. 65, 75 L. Ed. 255), to show that the only proper basis of any rate order is a determination of the value of the property used in the intrastate business, segregated from the property used in the interstate business. Such a basis is proper when confiscation is charged, as was held in that case, but in the case at bar there is no charge of confiscation, hence the case is not controlling on the issues involved here.

In our opinion, the findings of the commission are supported by competent evidence. Upon review of such an order, the order will stand if there is substantial evidence supporting the conclusions of the commission. See *City of Detroit* v. *Michigan Railroad Commission,* 209 Mich. 395 (P. U. R. 1920 D, 867). We must assume that the rates established by the Federal communications commission for interstate tolls are fair and reasonable. In the case at bar evidence was produced which had a tendency to show that the telephone company charges higher tolls within the State than it requires for the same service interstate, with the use of the same facilities and for comparable distance. For example, the air distance from Detroit to Niles, Michigan, is 171 Miles and the toll for a long distance call from Detroit to Niles is $1 (initial period charge), while the air distance from Detroit to South Bend, Indiana, is 173 miles and the rate is 75 cents.

Mr. Joseph Bell, toll traffic supervisor of the telephone company, testified as follows:

"*Mr. Pugh:* The fact is that in the schedule of rates adopted by the A. T. & T., and the schedule adopted by the Michigan Bell Telephone Company, there is a differential in the charge made for the same mileage between interstate and intrastate calls?

"*Mr. Bell:* Yes, sir.

"*Mr. Pugh:* Although the same facilities may be used?

"*Mr. Bell:* Yes, sir.

"*Mr. Pugh:* In placing the messages over exactly the same facilities?

"*Mr. Bell:* Yes.

"*Mr. Pugh:* On intrastate calls and interstate calls?

"*Mr. Bell:* Yes.   *   *   *

"*Q.* But essentially, the service of hauling a message from Clare to Detroit, whether that message be continued onward over the Long Lines to Toledo, is essentially the same sort of service as would have been the operation of hauling a message from Clare to Detroit for termination in Detroit, is it not, as far as the characteristics of the service performed, and the facilities used, and the results obtained are concerned?

"*A.* Yes.

"*Q.* For which the Michigan Bell Telephone Company in one instance charges a higher rate if the entire call is completed within the State than it would if the call were to extend beyond the State?

"*A.* So it would appear, yes, sir."

It is next urged that the change of method in rate fixing, adopted by the commission, was so radical as to deny to plaintiff "procedural due process of law." Act No. 206, Pub. Acts 1913, empowers and expressly authorizes the commission to inquire into the reasonableness of rates charged by the telephone company for any class of its service. In the case at bar, the telephone company was served with an order which informed it of the nature of the complaint made concerning its tolls for intrastate long distance service. It was accorded a hearing before the commission, and when the commission entered an order establishing a new rate schedule plaintiff

appealed in the manner provided by statute. Under such circumstances there was no denial of due process of law.

Upon review in the circuit court, the burden rests upon the telephone company to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable. The trial court found that the commission's order should be regarded as one for the fixing of intrastate toll rates. The trial court also determined that the telephone company had not established its right to any relief in a chancery court. The record sustains and we are in accord with such a finding.

The decree of the trial court is affirmed, with costs to defendant.

BUSHNELL, CHANDLER, NORTH, McALLISTER, and WIEST, JJ., concurred with SHARPE, C. J.

BUTZEL, J. I concur in the foregoing opinion. Plaintiff makes no claim that the lowering of the intrastate rates to the level of interstate rates will result in confiscation. Discrimination was shown in the charges to points outside the State, the toll to which was lower than to points within the State, both being equidistant from the point where the messages originated, although practically a like contemporaneous service was given and to a considerable extent, the same terminals, operators, maintenance and other facilities were used. The order to show cause issued by the commission did not preclude the company from showing that the lowering of the rates would not give it a reasonable compensatory return on its entire intrastate business. Appellant did show that the interstate company, through its larger and more efficient facilities, handled a greater volume of business at a smaller

cost; that its heavier wires permitted more extensive and diversified contemporaneous uses; that it enjoyed a far larger percentage of additional business through nontelephonic uses of its wires, and that it had other advantages that did not accrue to the intrastate company. However, it did not show, nor was it prevented from showing, that the total return from its entire intrastate business would not furnish a compensatory return on the investment. It seemed to intimate that it had some rights in the rate fixed in 1936. However, a rate is always subject to revision.

Great stress is placed by the plaintiff on the case of *Smith* v. *Illinois Bell Telephone Co.*, 282 U. S. 133 (51 Sup. Ct. 65, 75 L. Ed. 255). In that case the telephone company claimed confiscation and the entire rates of the company were examined. In the present case, confiscation is disclaimed by plaintiff and it was not precluded from going into the question as to whether the new rates afforded a compensatory return. The burden of proof was on plaintiff. However, it was confronted with the very exorbitant cost, in excess of a million dollars, with the length of time and the amount of effort it would take to make another exhaustive rate examination before the Michigan public utilities commission. It is impossible from this record to ascertain the various elements of costs, revenues, and other factors that should be apportioned or allotted to interstate or intrastate, including local exchange business. These elements are closely integrated. The State has no control over the interstate rates as fixed by the Federal communications commission. The plaintiff did show that the equalizing of the intrastate long distance rates figured on the basis of the 1938 business and after the adjustment of the then existing rate of income tax would cost the company

$465,000. Our present inquiry must be for that year, although in the case of *Bell Telephone Co.* v. *Pennsylvania Public Utility Commission,* 135 Pa. Super. 218 (5 Atl. [2d] 410), the court took judicial notice of the fact that 1937 was a poor business year. By the same token, it might be said that conditions had just begun to improve in 1938. The record also indicates that rates were lowered during certain hours and days in order to attract business, and the attorney general argues that the lowering of intrastate rates would result in increased business which would bring in tolls during the slack periods and furnish additional revenue up to a certain point. While the record indicates that the Southern Telephone & Telegraph Company, one of the associated Bell Companies, reduced its intrastate rates in Louisiana and Georgia to the level of the interstate rates, a comparison between the States is of little value unless all elements entering into the problem in each State are shown. *Smyth* v. *Ames,* 169 U. S. 466 (18 Sup. Ct. 418, 42 L. Ed. 819).[*] Notwithstanding a slight difference in the laws and a much more complete record in the instant case, the case does not differ in its material aspects from that of *Bell Telephone Co.* v. *Pennsylvania Public Utility Commission, supra,* an appeal from which was subsequently dismissed by the United States supreme court, 309 U. S. 30 (60 Sup. Ct. 411, 84 L. Ed. 563), because there was no Federal question involved, as there was no denial of due process, when on appropriate hearing the State court determined that there was evidence to sustain the finding. The court further stated that as long as the rates established were not confiscatory and did not in any way cast a burden on interstate commerce, the State court had a

---

[*] Modified 171 U. S. 361 (18 Sup. Ct. 888, 43 L. Ed. 197).—REPORTER.

right to decide what constitutes an unreasonable discrimination in favor of interstate as against intrastate traffic.

Plaintiff, however, claims that it was denied procedural due process; that the order of the commission was simply an "*ipse dixit*" judicial fiat and not based on evidence and that it lacked any basis whatsoever. We do not agree that these claims are justified. The instant case differs from *West Ohio Gas Co.* v. *Public Utilities Commission,* 294 U. S. 63 (55 Sup. Ct. 316, 79 L. Ed. 761), where there was no basis whatsoever for making the reduction. In the present case, the interstate rate for similar contemporaneous service together with the other facts shown was a sufficient basis for the determination. Plaintiff offered no testimony whatsoever that tended to show it would not obtain a compensatory return on its investment. It was not denied the opportunity to do so. The order to show cause required the company to cease and desist from the "collection of unreasonable and unjust charges from intrastate toll message service," et cetera. American Telephone & Telegraph Company, the interstate company, through its ownership of 99.99 per cent. of stock, has direct control of plaintiff. *People, ex rel. Attorney General,* v. *Michigan Bell Telephone Co.,* 246 Mich. 198 (P. U. R. 1929 B, 455; P. U. R. 1929 E, 27). The companies are also closely interwoven through the use of joint facilities. They must be considered together for regulatory purposes, notwithstanding that the forms of separate entities are maintained. There is no claim or right of the Michigan public service commission to regulate interstate rates which must be accepted as fixed by the Federal communications commission. While the accounting for the two companies is kept separately, nevertheless, the companies use the same

terminals, operators, maintenance and many other facilities. There is such an integration of them so as to make them interdependent and to give each service mutual benefits as if they constituted one company.

In answer to the alleged discrimination in favor of interstate over intrastate customers, the company sought to show that substantial differences existed between the two services. While it is apparent that some minor differences exist, the finding of discrimination is amply substantiated by the record. Failing to prove a substantial dissimilarity between the services, the burden of proof was then upon the plaintiff to show that it would not receive a reasonable compensatory return on its entire investment under the order. This it failed to do. It still has such opportunity as to rates in the future, although the costs in time, money and effort may make it prohibitive, and now undesirable in view of the better business conditions that exist. I cannot accede to the proposition that plaintiff has been denied procedural due process of law.

The decree of the trial court should be and is affirmed, with costs to defendant.

Bushnell, Chandler, and McAllister, JJ., concurred with Butzel, J. The late Justice Potter took no part in this decision.