MIDDLEWEST MOTOR FREIGHT BUREAU, Midwest Motor Express, Inc., Mercury Motor Freight Lines, Inc., Plaintiffs,

v.

The UNITED STATES of America and the Interstate Commerce Commission, Defendants,

v.

NORTHERN PACIFIC RAILWAY COMPANY, Intervenor.

No. 3–64–Civ. 89.

United States District Court
D. Minnesota,
Third Division.
Aug. 24, 1964.

George D. Michalson, Kansas City, Mo., and Thomas G. Lovett, Jr., Minneapolis,. Minn., for plaintiffs.

Clarence William Vandergrift, Atty.,. Office of Gen. Counsel, and Robert W.. Ginnane, Gen. Counsel, Interstate Com-- merce Commission, Washington, D. C.,. John H. D. Wigger and William Orrick,. Jr., Attys., Dept. of Justice, Washington,. D. C., and Miles W. Lord, U. S. Atty.,. Minneapolis, Minn., for defendants.

Earl F. Requa, Frank S. Farrell and: Reginald Ames, St. Paul, Minn., for in-- tervenor.

Before BLACKMUN, Circuit Judge,. and DONOVAN and LARSON, District. Judges.

LARSON, District Judge.

This is an action to set aside an Order of the Interstate Commerce Commission: (Commission). Jurisdiction in this Court is based on 28 U.S.C. § 1336, 28. U.S.C. §§ 2321–2325, 28 U.S.C. § 2284,. 49 U.S.C. § 305(g) and 5 U.S.C. §: 1009(c).

This case arises out of the third at-- tempt by the motor carriers to regain the- Bismarck-Mandan to the Twin Cities leg of butter traffic from North Dakota to the- east coast which they lost to a through. rail rate to the east in 1959. The motor· carriers, through their joint publishing· agent, plaintiff Middlewest Motor· Freight Bureau, filed tariffs effective Oc- tober 20, 1962, setting a rate of 50 cents:

per hundredweight on a 40,000 pound minimum load. This rate was to apply only as a proportional rate on shipments moving from the Twin Cities to the east by rail. The rate was protested by a railroad committee, and an oral hearing was held, the matter having been designated Investigation and Suspension Docket M–16602. On June 24, 1963, Division 2 of the Commission issued an Order and Report holding that the rate had not been shown to be just and reasonable and ordering it cancelled. Plaintiffs' petition for reconsideration was denied, as was a second petition for reconsideration or further hearing. Plaintiffs then filed a petition seeking a finding that an issue of general transportation importance was involved, which finding would have entitled the plaintiffs to a reconsideration by the full Commission. This was denied and plaintiffs, having exhausted their administrative remedies, brought the instant proceeding. On March 18, 1964, a temporary restraining order was issued which suspended the Commission's Order of June 24, 1963, pending a determination of this proceeding.

█ The "Final Order" of the Commission before this Court for review is the Report of Division 2 of the Commission issued June 24, 1963. The scope of review of a Commission ruling is, of course, limited.[1] In a rate case, matters of cost are important and they are solely for the judgment of the administrative agency. Illinois Commerce Commission v. United States, 292 U.S. 474, 481, 54 S.Ct. 783, 78 L.Ed. 1371 (1934). The plaintiffs here do not attack the Commission's conclusions as to cost evidence; rather they assert that the approach the Commission used was incorrect and that the Commission failed to take account of the National Transportation Policy.

██ The Interstate Commerce Act directs that charges made for motor carrier service be "just and reasonable" and declares unlawful "unjust and unreasonable" charges. 49 U.S.C. § 316(d).

It is this standard by which proposed rates are judged and the burden of proof is on the plaintiff to show that the proposed rate is just and reasonable. 49 U.S.C. § 316(g). All parties agree that an essential element of a just and reasonable rate is that it be compensatory. This is basic to the Commission's approach to rate making. See, e. g., Gypsum Board from Kansas City to Chicago, 304 I.C.C. 125 (1958). The function of this Court in the instant proceeding is to determine whether or not the Commission's finding that the proposed rate is not compensatory should be affirmed. If so, as Judge Magruder has said, "it will follow that the Commission's ultimate conclusion rejecting the [proposed rate] must also be sustained, for it seems quite clear that it lies within the discretion of the Commission to reject a rate as unlawful which does not provide a return of out-of-pocket costs to the carriers." Boston and Maine R. R. v. United States, 153 F.Supp. 952, 957 (D.Mass.1957). Plaintiffs have urged that the Commission failed to take into account the National Transportation Policy and particularly 49 U.S.C. § 15a(3). But in view of the Commission's finding that the proposed rate was not compensatory, such considerations were unnecessary. The cases cited by the plaintiffs to support their argument as to the National Transportation Policy are inappropriate because in these cases the Commission either specifically found the proposed rate compensatory, St. Louis-San Francisco Ry. Co. v. United States, 207 F.Supp. 293 (E.D.Mo.1962); Missouri Pacific Ry. Co. v. United States, 203 F.Supp. 629 (E.D.Mo.1962), or at least that it "would equal or exceed by a very small margin the estimated out-of-pocket costs," Boston and Maine R. R. v. United States, 202 F.Supp. 830 (D.Mass.1962).

█ To be compensatory, a rate must equal out-of-pocket costs. I. C. C. v. New York, N. H. & H. R. Co., 372 U.S. 744, 748, 83 S.Ct. 1038, 10 L.Ed.2d 108 (1963). Out-of-pocket costs have been

1. Cf. Hart v. I. C. C., 226 F.Supp. 635, 641 (D.Minn.1964).

defined as the "added costs necessary to carry a particular class of traffic over a particular route," Note, 73 Harv.L.Rev. 762, 763 (1960), which summarizes the Commission's view.[2]

■ At the hearing the plaintiffs produced statements indicating "the out-of-pocket costs of transporting a 40,000 pound shipment of butter from Bismarck, N. D., to Twin Cities, Minnesota," (Exhibits 12, 13) and supporting evidence (Exhibits 11, 14 and related testimony). The Commission, analyzing the plaintiffs' cost figures, concluded that they "are defective in certain respects." 321 I.C.C. 386, 389. It then said:

> The costs developed by the proponents are so slightly below the proposed rate, that consideration of the understatements in those costs referred to above unavoidably leads to the conclusion that they are not shown to be compensatory. Ibid.

Such a finding was well within the province of the Commission, and reflects a permissible application of the statutory standards.

■ Plaintiffs argue that the Commission's conclusion that the proposed rate would not be compensatory is unjustified because the plaintiffs would be "better off" from a net revenue standpoint at the new rate than they are carrying grain from North Dakota to the Twin Cities, which is the present type of eastbound traffic. They contend that the proposed rate is thus compensatory regardless of whether it equals out-of-pocket expenses (though they do not necessarily concede that the proposed rate

does not equal out-of-pocket expenses). It is the Commission's failure to use a net revenue test to determine compensativeness which the plaintiffs claim is the defect in the Commission's report. The motor carriers would be "better off" at the proposed rate than carrying grain, because grain is a commodity exempt from Interstate Commerce Commission rate regulation under 49 U.S.C. § 303(b) (6).

> "The exemption of motor vehicles carrying 'agricultural (including horticultural) commodities (not including manufactured products thereof)' was designed to preserve for the farmers the advantage of low-cost motor transportation. See especially 79 Cong.Rec. 12217. The victory in the Congress for the exemption was recognition that the price which the farmer obtains for his products is greatly affected by the cost of transporting them to the consuming market in their raw state or after they have become marketable by incidental processing." East. Texas Motor Freight Lines v. Frozen Food Express, 351 U.S. 49, 51, 76 S.Ct. 574, 576, 100 L.Ed. 917 (1956).

To base rates on regulated items on a net revenue comparison with items exempt from rate regulation would ignore the standards of compensativeness of rates used by the Commission and approved by the courts,[3] and could lead to destructive rate-making.

■ The plaintiffs have failed to produce authorities supporting their view that a rate is compensatory though it does not cover out-of-pocket costs.

2. "[Out-of-pocket expenses are] those expenses which are added by an increase, or reduced by a decrease in traffic, can be directly assigned to specific traffic movements, and are directly affected by the use of carrier facilities. The remaining, or constant expenses, are those incurred in connection with traffic as a whole, which over a period of time, are unaffected by any increase or decrease in traffic volume, and as they are not capable of direct assignment, must be fairly apportioned." New Automobiles in Interstate Commerce, 295 I.C.C. 475, 500 (1945).

3. See, e. g., Malone Freight Lines, Inc. v. United States, 204 F.Supp. 745, 755 (N.D.Ala.1962); Boston and Maine R. R. v. United States, 153 F.Supp. 952, 954 (D. Mass.1957); Chicago & E. I. R. Co. v. United States, 107 F.Supp. 118, 125, 128 (S.D.Ind.1952), aff'd 344 U.S. 917, 73 S.Ct. 346, 97 L.Ed. 707 (1953) (Per Curiam).

Though courts should be alert to make certain that no statutory requirement is overlooked, the administrative rate-maker has broad discretion to establish standards by which the statute is applied. Certainly the cost evidence in the case presents a rational basis for the Commission's conclusion as to non-compensativeness, and "although the Commission under some circumstances may permit a carrier to establish a rate not proved to cover out-of-pocket costs, it is not required to do so." Davis & Randall, Inc. v. United States, 219 F.Supp. 673, 677 (W.D.N.Y.1963).

The plaintiffs raise three procedural points:

1. The findings of the Commission are inconsistent;

2. There should have been a hearing examiner's report;

3. The plaintiffs' petitions for reconsideration and further hearing should have been granted.

1. This argument is based on the plaintiffs' view that a rate must be compensatory if the plaintiffs will be "better off" with it than without it. But in view of our holding that the Commission reached a permissible conclusion on the issue of compensativeness, plaintiffs' argument must be rejected.

█ 2. The defendant Commission argues that this objection was not raised before the Commission and so should not be considered here. This court has previously indicated that an administrative agency should be given the initial opportunity to correct its alleged error.

Hart v. I. C. C., supra, 226 F.Supp. at p. 643. Moreover, the process of decision in the instant proceeding involved the reaching of conclusions based on documentary evidence. The facts in evidence were not disputed; the argument was over the conclusions to be drawn from them, and there was no question of the credibility of witnesses. In such a situation, Judge Devitt, speaking for this court, has said, "[W]e think the failure to have the hearing examiner make a report is not error requiring a reversal or vacation of the agency's order." Canadian Pacific R. Co. v. United States, 158 F.Supp. 248, 257 (D.Minn. 1958).

█ 3. Plaintiffs' position on this point seems to be that the plaintiffs originally followed a Commission recommendation as to cost formula and after the Commission found the recommended method embodied understatements, the plaintiffs should have been given a further hearing to show that it also embodied overstatements which outweighed the understatements.[4] By their own admission, plaintiffs had ample opportunity to attack the Commission's cost formula before the order, and the briefs to the Commission and portions of the record indicate that they used this opportunity. So their objection would seem to be not so much that the Commission should have granted the petition for reconsideration but that it should have, at some point, considered plaintiffs' arguments. A full scale rule-making proceeding would seem a more appropriate place for such considerations and such a proceed-

4. Interwoven in this third objection is the argument that the Commission's actions constituted a change of standards with the plaintiffs following the old and judged by the new. This is apparently why E. Brooke Matlack, Inc. v. United States, 119 F.Supp. 617 (E.D.Pa.1954) is cited. Matlack was a certificate of public convenience and necessity case. The Commission had previously allowed applicants to show the broad needs for the particular service in the areas involved but denied the Matlack application partly because of a failure to adequately pinpoint needs of individual shippers. In setting aside the Commission's Order, the Court held that the carrier should have been given the opportunity to meet the revised standards. In the instant case the plaintiffs' proposed rate was based on suggestions made by a hearing examiner in a previous report but the rejection by the Commission because of understatements does not necessarily reflect a change in standards by the Commission; rather it indicates that because of cost understatements the proposed rate did not meet out-of-pocket costs.

ing is, in fact, taking place at the present time.[5]

We have considered the arguments and briefs of counsel and all the files and records herein.

We conclude that plaintiffs are not entitled to judgment setting aside the Commission Order of June 24, 1963, in Investigation and Suspension Docket M–16602 and are not entitled to judgment permanently enjoining the Commission from enforcing or attempting to enforce said Order.

The complaint of plaintiffs is dismissed.

5. Docket No. 34013, Rules to Govern the Assembling and Presenting of Cost Evidence.