266 U.S. 474 (1925)
UNITED STATES ET AL.
v.
VILLAGE OF HUBBARD, OHIO.
UNITED STATES ET AL.
v.
CITY OF WELLSVILLE, OHIO.
Nos. 25 and 26.
Supreme Court of United States.
Argued April 22, 1924.
Restored for reargument June 9, 1924.
reargued December 3, 1924.
Decided January 5, 1925.
APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.
*475 Mr. Blackburn Esterline, Assistant to the Solicitor General, for the United States, at the first argument. He also filed a supplemental brief for the United States for the second argument.
Mr. T.H. Hogsett, with whom Mr. Agnew Hice was on the brief, for Steubenville, East Liverpool & Beaver Valley Traction Company, appellant in No. 26, at the second argument.
Mr. Edmond H. Moore, with whom Mr. John J. Boyle was on the brief, for the Village of Hubbard, appellee in No. 25, at both arguments.
Mr. Charles Boyd, with whom Mr. George D. Ingram was on the brief, for the City of Wellsville, appellee in No. 26, at both arguments.
Mr. P.J. Farrell, for the Interstate Commerce Commission, at both arguments.
Mr. Douglass D. Storey and Mr. U.C. DeFord, filed a brief on behalf of the Pennsylvania-Ohio Power & Light Company, appellant in No. 25.
*476 Mr. Harry Brokaw, by leave of court, filed a brief on behalf of the City of East Liverpool, Ohio, as amicus curiae, in No. 26.
Restored to docket for reargument June 9, 1924.
MR. JUSTICE BRANDEIS delivered the opinion of the Court.
These cases were argued together. They present on substantially similar facts the question whether interurban electric railroads engaged in interstate commerce are subject generally to regulation by the Interstate Commerce Commission.
Each case is a direct appeal, under the Act of October 22, 1913, c. 32, 38 Stat. 208, 220, from a final decree of the federal court for northern Ohio setting aside an order of the Commission. In each the plaintiff below was an Ohio municipality, and the carrier, who intervened as defendant, an independent interurban electric railroad. The carriers operate lines within and between Ohio municipalities, and also between these and a city in an adjoining State. The orders require the carriers to raise intrastate interurban passenger fares which, as the Commission found, subject interstate commerce to unjust discrimination. Fares within the Ohio municipalities are not affected. Ohio Rates, Fares, and Charges, 64 I.C.C. 493; Ohio and Pennsylvania Rates, Fares, and Charges, 64 I.C.C. 517.
The Commission granted the relief under the rule of The Shreveport Case, 234 U.S. 342, and Railroad Commission of Wisconsin v. Chicago, Burlington & Quincy R.R. Co., 257 U.S. 563. The District Court held the orders void, on the ground that the jurisdiction conferred by Congress upon the Commission did not extend to interurban electric railroads of the character of those here involved; that its jurisdiction was limited to those which are operated as part of a general steam railroad system, *477 or which, if operated independently, are engaged in the general transportation of freight, in addition to their passenger and express business; and that these carriers possessed neither of "these dominating characteristics." Village of Hubbard, Ohio, v. United States, 278 Fed. 754; City of Wellsville, Ohio, v. United States, 278 Fed. 769. We have no occasion to enquire into the correctness of the latter ruling, as we are of opinion that the Commission's jurisdiction to prevent unjust discrimination by interurban electric railroads against interstate commerce is not so limited.[1]
In 1897, the Commission assumed jurisdiction over the passenger fares of an electric railroad which operated between the District of Columbia and a neighboring village in Maryland. Willson v. Rock Creek Ry. Co., 7 I.C.C. 83. The development of interurban roads became general about 1902.[2] The authority to regulate them has been consistently exercised by the Commission in many cases and for many purposes. Since 1915, interurban electric roads have been required to file with it annual reports of their finances and operations.[3]Jurisdiction over Urban Electric Lines, 33 I.C.C. 536. In exercising authority over their passenger fares, no distinction has been made between those interurban roads which were engaged in the general transportation of freight in addition to their *478 passenger and express business and those which were not.[4] On the other hand the distinction suggested in Omaha & Council Bluffs Street Ry. Co. v. Interstate Commerce Commission, 230 U.S. 324, 337, between interurban railroads and urban or suburban street railways has been carefully observed.
Neither in the Act to Regulate Commerce, February 4, 1887, c. 104, 24 Stat. 379, nor in any amendments thereto prior to that of June 18, 1910, c. 309, 36 Stat. 539, 552, is there any specific reference to electric railroads. The basis for the jurisdiction of the Commission over them, is the generality of the language of the original act, which declared in § 1 that its provisions "shall apply to any common carrier or carriers engaged in the transportation of passengers or property . . . by railroad." As the act made no distinction between railroads operated by steam and those operated by electricity, the *479 Commission made none. Similarly, the words "common carrier by railroad" contained in the Federal Employers' Liability Act, April 22, 1908, c. 149, 35 Stat. 65, Kansas City Western Ry. Co. v. McAdow, 240 U.S. 51; in the Safety Appliance Act of March 2, 1893, c. 196, 27 Stat. 531, as amended March 2, 1903, c. 976, 32 Stat. 943, Spokane & Inland Empire R.R. Co. v. Campbell, 241 U.S. 497; and in the Hours of Service Act, March 4, 1907, c. 2939, 34 Stat. 1415, Denver & Interurban Ry. Co. v. United States, 236 Fed. 685, were applied to interurban electric railroads.
The correctness of the Commission's action in assuming jurisdiction over the interurban roads is confirmed by the action of Congress which, in recent amendments of the Act to Regulate Commerce, limited, in respect to certain subjects, the authority over them. The Commission entertained, in 1908, applications of interurban electric railroads to establish for freight through routes and joint rates with steam railroads.[5] The Act of June 18, 1910, c. 309, 36 Stat. 539, 551, 552, provided that "the commission shall not . . . establish any through route, classification, or rate between street electric passenger railways not engaged in . . . transporting freight in addition to their passenger and express business and railroads of a different character."[6] Transportation Act, 1920, c. 91, 41 Stat. 456, enlarged, in several respects, the powers of the Commission, and dealt also in other ways with carriers engaged in interstate commerce. In doing so, it provided expressly in five sections for the exclusion of certain electric railways from the *480 operation of the powers conferred; and it also differentiated interurban electric railways from street and suburban railways by specific reference to each, although a distinction in treatment was made in only one case.[7] These provisions indicate that Congress did not intend to deny to the Commission the power to regulate interurban railways in other respects.
The separate opinion of MR. JUSTICE McREYNOLDS.
In Omaha & Council Bluffs Street Ry. Co. v. Interstate Commerce Commission, 230 U.S. 324, decided June 9, 1913, this Court pointed out the radical difference between street railroads and common carriers by railroad and, for the potent reasons indicated, held the latter were within *481 the Interstate Commerce Act and the former were not. The distinction is certainly a sound one and, I think, it was rightly observed by the court below.
Since the opinion in 1913 Congress has given much consideration to the Interstate Commerce Act, but nowhere do I find expression of a definite purpose to disregard the limitations there approved. The question is highly important; the subject matter is essentially local in nature; the States can and should control until and unless Congress, by clear language, shall indicate its intent to regulate. The creators ought not be deprived of power over their own creatures as to domestic traffic permitted only under carefully considered contracts, because of detached and obscure sentences found here and there in a general enactment designed for carriers whose lines constitute integral parts of the great interstate railway system of the country.
Reversed.
NOTES
[1] It was also contended that because the intrastate fares had been fixed by contract between the municipalities and the carriers (Interurban Railway & Terminal Co. v. Public Utilities Commission, 98 Oh. St. 287), Congress was without power to authorize an increase of the fares. The unsoundness of this contention was settled in New York v. United States, 257 U.S. 591.
[2] See 77 Commercial & Financial Chronicle, July 25, 1903, p. 172. Louis E. Fischer, "Economics of Interurban Railways," p. 4.
[3] The uniform system of accounts for electric railways prescribed by the Commission became effective July 1, 1914. For the year ending December 31, 1923, reports were filed by 271 companies. They operated, in the aggregate, 14,165.28 miles of road.
[4] Boyle v. Great Falls & Dominion R.R. Co., 20 I.C.C. 232; Beall v. Washington, Alexandria & Mt. Vernon Ry. Co., 20 I.C.C. 406; Citizens of Somerset v. Washington Ry. & El. Co., 22 I.C.C. 187; Silvester v. City & Suburban Ry., 22 I.C.C. 201; Bitzer v. Washington-Virginia Ry. Co., 24 I.C.C. 255; Virginia Highlands Citizens' Assn. v. Washington-Virginia Ry. Co., 30 I.C.C. 593; Damon v. Crosby Transportation Co., 33 I.C.C. 448; Steubenville v. Tri-State Ry. & El. Co., 38 I.C.C. 281; St. Louis, Mo.-Illinois Passenger Fares, 41 I.C.C. 584; Michigan Ry. Co. v. Michigan Central R.R. Co., 49 I.C.C. 255; Louisville Passenger Fares, 52 I.C.C. 366; Newspapers on Passenger Cars, 57 I.C.C. 743; Local Fares of the Hudson & Manhattan R.R. Co., 58 I.C.C. 270; Joint Passenger Fares, 59 I.C.C. 170; Local and Joint Passenger Fares, 59 I.C.C. 430; Beall v. Wheeling Traction Co., 60 I.C.C. 600; W.B.A. Commuters Club v. Washington, Baltimore & Annapolis El. R.R. Co., 61 I.C.C. 302; Intrastate Fares of Chicago, North Shore & Milwaukee R.R., 62 I.C.C. 188; Fares of Washington-Virginia Ry. Co., 62 I.C.C. 200; New Albany v. Louisville & Northern Ry. & L. Co., 64 I.C.C. 468; Intrastate Rates Within Illinois, 77 I.C.C. 173. Of the 267 operating companies which filed reports for the year 1917, 40 did not report any freight revenue. Of the total revenue of all the roads, only 9.4 per cent. was freight revenue.
[5] Chicago & Milwaukee Electric R.R. Co. v. Illinois Central R.R. Co., 13 I.C.C. 20; Cedar Rapids & Iowa City Ry. & L. Co. v. Chicago & Northwestern Ry. Co., 13 I.C.C. 250.
[6] See United States v. American Railway Express Co., 265 U.S. 425, 430, note 3.
[7] Section 422, 41 Stat. 488, which introduces the new § 15a dealing with the determination of a fair return excludes "(b) street or suburban electric railways unless operated as a part of a general steam railroad system of transportation, (c) interurban electric railways unless operated as a part of a general steam railroad system of transportation or engaged in the general transportation of freight" etc. Section 402, amending § 1, which provides for the issuance of certificates of public convenience and necessity in the case of construction, extension or abandonment of a line, excludes, by paragraph 22, p. 478, "street, suburban, [and] or interurban electric railways, which are not operated as a part or parts of a general steam railroad system of transportation." Section 439, which inserts the new § 20a, concerning the issue of securities, excludes, by par. 1, p. 494, "a street, suburban, or interurban electric railway which is not operated as a part of a general steam railroad system of transportation." Section 209, concerning the guaranty to carriers after the termination of federal control, excludes, by par. a, p. 464, "a street or interurban electric railway not under Federal control at the time Federal control terminates, which has as its principal source of operating revenue urban, suburban, or interurban passenger traffic or sale of power," etc. Section 300, which deals with the Labor Board, excludes by par. 1, p. 469, "a street, interurban, or suburban electric railway not operating as part of a general steam railroad system of transportation."