**GARDEN CITY FLORAL, a corporation, Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

No. 1858.

United States District Court
D. Montana, Great Falls Division.

Aug. 25, 1956.

---

**610**

Leo Graybill, Jr., Great Falls, Mont., for plaintiff.

Victor R. Hansen, Asst. Atty. Gen., James E. Kilday, Frederica S. Brenneman, Attys., Dept of Justice, Washington, D. C., Krest Cyr, U. S. Dist. Atty., Butte, Mont., for defendant, United States of America.

Robert W. Ginnane, Gen. Counsel, C. H. Johns, Isaac K. Hay, Asst. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission, defendant.

Leo Graybill, Jr., Great Falls, Mont., for Montana Florists Assn., plaintiff in intervention.

John H. Weaver, Great Falls, Mont., Elmer F. Slovacek, Chicago, Ill., for Railway Express Agency, intervener.

Before POPE, Circuit Judge, PRAY, Chief Judge, and BOLDT, District Judge.

PER CURIAM.

This is an action brought for the purpose of enjoining the operation or enforcement of a so-called "report" issued by the Interstate Commerce Commission on March 5, 1956. The report was issued in proceedings initiated before the Commission by petition filed by Railway Express Agency, Inc., seeking an investigation as to whether intrastate rates and charges on express traffic within the State of Montana were such as to cause an undue, unreasonable, or unjust discrimination against interstate commerce contrary to the provisions of Sec. 13, paragraph (4), of the Interstate Commerce Act,[1] in that such intrastate rates were not contributing their fair share of the revenues required by the Express Agency to enable it to render adequate and efficient express service. The report found and determined that the intrastate rates within the State of Montana were abnormally low and insufficient to cover the full cost of the service; that they were not contributing their fair share of the revenues required to enable the rendition of adequate and efficient express service; that this imposed an undue burden on interstate commerce and caused unjust discrimination against such commerce in violation of that section of the Act; and that rates and charges on intrastate traffic increased to the same extent as was authorized by the Commission on interstate traffic would remove the unjust discrimination against interstate commerce which the Commission found to exist.

In bringing this action the plaintiff treated the report as an order allowing the increases mentioned. A three judge court was assembled for the hearing of the case pursuant to 28 U.S.C.A. § 2325.

The final paragraph of the order provides: "An order requiring the establishment of tariff changes in accordance with the findings herein made will be entered unless we are informed by the Board of Railroad Commissioners of the State of Montana within 30 days from the day of service of this report that changes as contemplated by these findings will be permitted." It is asserted that the quoted language discloses that the plaintiff has sought to challenge what is not a final order or one reviewable by this court on the ground that the report sought to be reviewed "does

---

1. "§ 13, par. (4). Duty of commission where State regulations result in discrimination. Whenever in any such investigation the commission, after full hearing, finds that any such rate, fare, charge, classification, regulation, or practice causes * * * any undue, unreasonable, or unjust discrimination against interstate or foreign commerce, which is forbidden and declared to be unlawful it shall prescribe the rate, fare, or charge, or the maximum or minimum, or maximum and minimum, thereafter to be charged, and the classification, regulation, or practice thereafter to be observed, in such manner as, in its judgment, will remove such advantage, preference, prejudice, or discrimination. * * *"

not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action", citing Rochester Tel. Corp. v. United States, 307 U.S. 125, 130, 59 S.Ct. 754, 83 L.Ed. 1147. Defendants say that the report is a mere tentative determination, interlocutory in character, and that it is not a coercive order commanding that the rates be increased by a certain date.

The order mentioned in the quoted last paragraph has not been entered but following the report the State board permitted the changes in rates contemplated by the report and the Railway Agency filed its revised rates and gave ten days notice of its intention to put them into effect.[2]

■ This challenge to our jurisdiction to entertain the suit is one which we must first consider for if we lack jurisdiction we may not decide the merits of the action. Mansfield C. & L. M. Railway Co. v. Swan, 111 U.S. 379, 381, 4 S.Ct. 510, 28 L.Ed. 462; United States v. Corrick, 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263. Although the question of reviewability of the report as a final order is not without difficulty, we are of the opinion that upon the authority of Frozen Food Exp. v. United States, 351 U.S. 40, 76 S.Ct. 569, the report and determination of the Commission here under attack is subject to review under the provisions of Title 28 U.S.C.A. § 1336 and Title 5 U.S.C.A. § 1009, cited in that case.

■ In our view the report and determination of the Commission here sought to be reviewed, in the language of the case last cited, "has an immediate and practical impact on carriers who are transporting the commodities, and the shippers as well". The "order" of the Commission operates to bring about consequences which are not conjectural and which will have a real impact upon the

shippers. The order of the Montana board permitting the Express Agency to file the schedules of rates making the changes contemplated by the order of the Commission shows on its face that it was made in compliance with and solely because of the Commission's "Order", and was in no sense the result of any independent hearing or determination by the Montana board. Without the injunction here prayed for plaintiff will have to pay the increased rates and that will be the consequence solely of the Commission's action. It is plain that under the provisions of the Acts referred to, as well as the generally established rules relating to review of administrative orders, it must have been within the contemplation of Congress that a determination by the Commission that certain intrastate rates would not contribute their fair share of the revenues required for adequate service and are imposing an undue burden upon interstate commerce should at some time be subject to review by the courts. If this "order" be not presently reviewable it is difficult to perceive when it would become reviewable.

Declaratory of the congressional purpose is the language of section 10(c) of the Administrative Procedure Act, Title 5, § 1009(c), that " * * * every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review. Any preliminary, procedural, or intermediate agency action or ruling not directly reviewable shall be subject to review upon the review of the final agency action." The agency action taken in the Commission's report of March 5, 1956, is in our view final because it is not in a true sense preliminary to any other action which will ever be taken but is immediately and fully operative in its impact on both shipper and carrier.

Defendants say that assuming that we have here an order "subject to judicial review", neither the shipper nor a ship-

2. Following the giving of that notice this suit was instituted in which a temporary restraining order was issued. Perhaps assuming that the restraining order ran

against the State board, it then issued an order suspending the new rates pending the disposition of this case.

per association may bring an action independent of the state board or commission to set aside an order made under section 13(4) of the Interstate Commerce Act.[3] It is to be noted that the object of this proceeding is not to enjoin the application of the increased rates merely so far as they apply to the plaintiff or to those represented by the association. The relief sought does not relate to a particular traffic of the plaintiff or of the association. The attack is made upon the order in its entirety, for as we shall see, the claim of the plaintiff in the main is first, that the order of the Commission is not supported by the necessary findings, and second, that the order lacks the necessary and indispensable proof to sustain it.[4]

Concededly the State of Montana or its appropriate board or commission might sue to enjoin a final order of the Interstate Commerce Commission issued under section 13(4). Whether a shipper or group of shippers may do so is apparently a matter of first impression.

But while we are not entirely free from doubt, we hold that the persons complaining here come within the provisions of Title 5, section 1009(a) which states that: "Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof." After all, the State of Montana is not required to pay the increased rates nor will its treasury be depleted in consequence of this order. In reaching this conclusion we are influenced by what is stated in United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S.Ct. 763.[5]

This brings us to the consideration of the merits of plaintiff's complaint and of the grounds upon which it bases its attack upon the Commission's report.

The report, entitled No. 31585, Montana Intrastate Express Rates and Charges, 298 I.C.C. 127, states fully and in detail the showing made before the Commission, and concludes with its find-

3. The action was first brought in the name of Montana Florist Association. When it appeared that defendants were objecting that such association lacked capacity to sue, the complaint was amended so as to make the Garden City Floral, a corporation, the plaintiff, and Montana Florists Association has been permitted to file its complaint in intervention in aid of the plaintiff's complaint. We assume that such an association would be a person within the meaning of Title 5, sec. 1001(b), and hence entitled to seek judicial review under Title 5, sec. 1009(a). The objection here considered does not go merely to the capacity of an unincorporated association to sue but is in substance that neither a shipper nor an association of shippers may attack a statewide revenue order.

4. The Commission's report also contains a provision that: "These findings are without prejudice to the rights of the authorities of the State of Montana, or any other interested party, to apply for a modification thereof as to any specific intrastate rate or charge, on the ground that it is not related to or affected by interstate rates or charges in such a way as to contravene the provisions of the Interstate Commerce Act."
The suggestion that this apparently customary provision for modification of specific rates, operates to limit plaintiff to that kind of relief, is plainly not tenable here where the problem relates to a right to attack the Commission's order in its entirety.

5. In that case referring to the section of the Administrative Procedure Act which we have just quoted, the court stated in its footnote 6, 351 U.S. at page 197, 76 S.Ct. at page 767:
"Legal wrong, as a ground for standing to appeal, was introduced by the Administrative Procedure Act, § 10(a). 60 Stat. 243. In explanation the reports of the Senate, No. 752, 79th Cong., 1st Sess. 212 and the House, No. 1980, 79th Cong., 2d Sess. 276, define 'legal wrong': 'The phrase "legal wrong" means such a wrong as is specified in section 10(e). It means that something more than mere adverse personal effect must be shown in order to prevail—that is, that the adverse effect must be an illegal effect.'
"Section 10(e) of the bill required reviewing courts to 'hold unlawful any action * * * (3) contrary to statutes or statutory right.' Section 10(e) of the Act is now in substantially the same language. 5 U.S.C. § 1009(e), 5 U.S.C.A. § 1009(e)."

ings. We make no effort here to restate what there appears.

Plaintiff's attack is centered upon Finding No. 1, which reads as follows: "1. That the transportation conditions under which intrastate and interstate shipments are transported in Montana are substantially similar and thus warrant generally the same level of rates and charges on both interstate and intrastate traffic." Plaintiff's argument assumes that this finding was designed to lay a foundation for an increase of intrastate rates on the basis of a showing under the rule applied in King v. United States, 344 U.S. 254, 73 S.Ct. 259, 97 L.Ed. 301.[6] Criticism is made of the language of Finding 1 which compares conditions attending Montana intrastate shipments with interstate shipments *in Montana*. Plaintiff says a necessary finding of similarity must be as to conditions of intrastate express in Montana when compared to conditions of interstate express "not only in Montana but elsewhere in the United States."[7] Plaintiff next says that even if a finding such as that in the King case had been made here, there was a complete failure of showing to support such a finding.

It seems to us that the hearing before the Commission did not involve an effort to establish proof such as that employed in the King case. The method of proof here was entirely different. The Express Agency undertook to show the amount of its Montana intrastate revenues and its Montana intrastate expenses. The manner in which that was done is set out at length in the Commission's report. No fault is found with the intrastate revenue figure. Plaintiff asserts that the showing as to Montana costs and expenses

and the portion thereof attributable to the intrastate business, lacks the required exactness. The report sets forth the cost accounting system used. The Commission found it adequate. And although plaintiff complains that it relied too much upon a statistical method, and asserts that more specific cost figures might have been produced, yet it would appear to us that the accounting procedures used in making the showing were, so far as we can tell, as adequate as possible. What is dispositive of this case is that they satisfied the Commission, and we are not prepared to say that the Commission was wrong. Due regard for our limited function here requires us to bear in mind the statement in Illinois Commerce Comm'n v. United States, 292 U.S. 474, 481, 54 S. Ct. 783, 786, 78 L.Ed. 1371: "Whether or not the cost study was representative, whether the study should have been more refined, and whether it should have been supplemented as appellants desired, are questions of fact, the determination of which is within the competence of the Commission. The Commission reached its conclusion after full hearing and thorough consideration of all questions presented. As the record affords a sufficient basis for the Commission's determination, it is not subject to review in the courts."

■■ In our view the evidence before the Commission warranted its finding that the intrastate rates are not bearing their fair share of the costs and expenses of the Express Agency's service. The determination of the Commission that the intrastate revenue for the year ending August 31, 1954, when compared with the intrastate operating expenses for the same period, left a deficit in excess of $25,000, so that for handling this intra-

---

6. "In the instant case, however, there is no showing that the character of operating conditions in Florida intrastate passenger traffic differs substantially from that of interstate passenger operations in the southern territory generally." 344 U.S. at page 264, 73 S.Ct. at page 265.

7. The body of the report, p. 129, recites: "Conditions incident to the intrastate

transportation of express in Montana are shown to be substantially the same as those incident to the interstate transportation of express in Montana, and to express transportation *throughout the nation generally*." (Emphasis added.)

Cf. Illinois Commerce Comm'n v. United States, 292 U.S. 474, 487, 54 S.Ct. 783, 788, 78 L.Ed. 1371: " * * * the order is to be read with the report."

state traffic in Montana the railroads received no compensation, fully authorizes an increase. "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286, 54 S.Ct. 692, 694, 78 L.Ed. 1260.[8]

It is thus apparent that Finding No. 1 is unnecessary to support the order finding that the intrastate rates are abnormally low, are insufficient to cover the full cost of the service, and not contributing their fair share of the revenues required to enable the Agency to render adequate and efficient express service.

The restraining order is vacated and judgment is entered for the defendants.

8. For a like reason the other findings that increases to the extent previously authorized for interstate traffic will not result in unreasonable rates, and that the increase will remove the unjust discrimination, are, we think, not subject to exception. These latter findings are not specifically attacked by plaintiff.