No. ——. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD CO. *v.* ILLINOIS ET AL. The application for supersedeas presented to MR. JUSTICE CLARK and by him referred to the Court is denied. *Edwin R. Eckersall, Edwin O. Schiewe, R. K. Merrill* and *J. P. Reedy* for applicant. *Latham Castle,* Attorney General, and *H. R. Begley,* Special Assistant Attorney General, for the State of Illinois et al., and *S. Ashley Guthrie* and *Francis D. Fisher* for the Milwaukee Road Commuters' Association, respondents.

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE BURTON, MR. JUSTICE HARLAN, and MR. JUSTICE WHITTAKER join, dissenting.

The public interest, justice between the litigants, and the protection of our own appellate jurisdiction seem to me to require that petitioner's application for a supersedeas in this case be granted. The dispute underlying the application involves intrastate commuter fares on petitioner's Chicago suburban service. The Interstate Commerce Commission, in proceedings under § 13 (4) of the Interstate Commerce Act, 24 Stat. 383, as amended, 41 Stat. 484, 49 U. S. C. § 13 (4), found that existing intrastate fares caused undue discrimination against interstate commerce, and in order to remove such discrimination prescribed fares higher than those authorized by the state commission. The District Court set aside the order, enjoined its enforcement, and remanded the case to the Commission. 146 F. Supp. 195. On appeal to this Court, we found that the Commission's order lacked "findings which reflect the commuter service deficit in the totality of intrastate revenues . . . ." *Chicago, M., St. P. & P. R. Co.* v. *Illinois,* 355 U. S. 300, 308. The District Court's judgment was modified to provide for a remand to the Commission for proceedings not inconsistent with the opinion of this Court.

It was noted in the opinion that the injunction of the District Court had been "stayed pending the hearing of the appeal to this Court. The excess fares are being impounded under a provision of the stay order providing for their refund to the persons who paid them in the event the judgment appealed from is affirmed." 355 U. S., at 302, n. 2. In the District Court petitioner moved for a stay of that court's original decree requiring refund of the excess fares, pending the further proceedings before the Commission contemplated by the judgment of this Court. On February 28, 1958, the motion was denied, and petitioner was ordered to begin distributing the impounded fund immediately. A notice of appeal from this order was filed on March 3, 1958, and the District Court denied a stay of its order pending a determination of the appeal.

It can hardly be denied that the contention raised by petitioner's appeal from the order of February 28 is substantial: that if after further proceedings before the Commission a valid order is entered to the same effect as the order earlier set aside, petitioner will be entitled to the impounded funds. Reliance on *Atlantic Coast Line R. Co.* v. *Florida,* 295 U. S. 301, gives force to the argument that such is present law. In that case the order of the Commission raising the intrastate rates was set aside "solely upon the ground that the facts supporting the conclusion were not embodied in the findings." 295 U. S., at 311. After the want of proper findings had been remedied and a new order sustained on appeal, the carrier was allowed to retain the monies collected under the first order of the Commission. "The final result of the litigation," as the Court summed it up in *United States* v. *Morgan,* 307 U. S. 183, 195, "was that the railroads were permitted to collect and retain the higher rates for a period during which there was no lawful order of the Commission superseding the state commission rates."

If it is conceded, as it must be, that it is not frivolous to suppose that petitioner may ultimately be entitled to the impounded fund, can it be doubted that the District Court, or this Court if the District Court has failed to act, is bound, in the absence of serious injury to the interests of others, to exercise equitable control over the fund to the end that petitioner's claim, if it is rightful, will not be rendered nugatory before it can be enforced? Such control has been exercised before by this Court. In *United States* v. *Morgan, supra,* a case presenting considerations very similar to those raised by petitioner's appeal, the Court stayed and superseded a District Court order requiring distribution of a fund after this Court had set aside an order of the Secretary of Agriculture and before further proceedings could be had before him.

Our first judgment in this case could no doubt have provided for protection of the fund pending the eventual outcome of the proceedings before the Commission. The broad power on review of the judgments of lower courts to "remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances," 28 U. S. C. § 2106, would have encompassed such a result. See also *Addison* v. *Holly Hill Fruit Products, Inc.,* 322 U. S. 607, 619–623. And the exercise of this equitable power is no less appropriate at the present stage of the proceedings when it has become necessary for the protection of petitioner's rights on appeal.

The fact that petitioner agreed to the order providing that the fund would be distributed if the District Court's judgment was affirmed is no barrier to the just disposition of the application now before us. In the first place, it is not at all clear that by their agreement the parties contemplated distribution of the fund in the circumstances that in fact came to pass. Although as a verbal matter

it is arguable that the judgment of the District Court was "affirmed," our judgment was based on grounds substantially different from those of the District Court. The judgment of this Court by no means finally determined the legality of the intrastate fares. It looked to further proceedings before the Commission that may well result in a valid order finding the fares discriminatory. Moreover, petitioner could not, by its agreement, bargain away the rights of the public, or relieve the court from its obligation to frame a decree that would implement the policy of the Federal Act protecting the revenues of interstate carriers. No more can such an agreement relieve this Court of its duty to do substantial justice, insofar as that is within the power of a court, between the contending interests in the litigation.

When the fund in this case is distributed, as a result of the inaction of this Court, that fund is irrecoverable, and whatever public interest may ultimately be shown in the retention of the fund by the carrier as a public agency is conclusively defeated, quite apart from its merits. The fact that if the fund is not immediately distributed some of the commuters may through carelessness lose their coupons or through indifference fail to claim refunds even if ultimately they should be allowed is scarcely a comparable equity in favor of distributing the whole fund at once. If the commuters have retained their coupons this long, it is unlikely that they will throw them away during the few additional months necessary for a just disposition of the fund.

And no great delay need necessarily be involved. The Commission has assured the parties that further proceedings on the remand will be promptly had, and petitioner has informed the Court that hearings will be held on or about March 24. We can easily condition the stay on effective measures for expedition. Moreover, disposition

of petitioner's appeal from the order of February 28 need not await the ultimate outcome of the Commission hearings. If after a consideration of the appeal the Court should conclude that a second order by the Commission could in no event give petitioner a right to the impounded fund, then of course it would be promptly distributed. But if, after a careful consideration of the questions raised by the appeal, we concluded that a second, valid order by the Commission would entitle petitioner to the fund, justice would require "the court to await the outcome of the proceedings in order that it may discharge the duty which it owes to the litigants and the public by avoiding unlawful disposition of the fund in the meantime, and ultimately distributing it to those found to be entitled to it." *United States* v. *Morgan,* 307 U. S. 183, 198. I think that the Court, by refusing to grant a supersedeas, rejects a common-sense and equitable disposition of the case.