**UTAH CITIZENS RATE ASSOCIATION, and Structural Steel & Forge Co., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**The Denver and Rio Grande Western Railroad Company, Union Pacific Railroad Company, Southern Pacific Company, The Western Pacific Railroad Company, Utah Railway Company, Tooele Valley Railway Company, Salt Lake Garfield and Western Railway Company, The Ogden Union Railway and Depot Company, Intervening Defendants.**

**Civ. No. C–58–60.**

United States District Court
D. Utah,
Central Division.

Nov. 2, 1960.

On Motion to Alter or Amend Judgment
Jan. 6, 1961.

**14**

Calvin L. Rampton (Pugsley, Hayes, Rampton & Watkiss), Salt Lake City, Utah, for plaintiffs.

John H. D. Wigger, Washington, D. C. (Robert A. Bicks, Washington, D. C., and A. Pratt Kesler, Salt Lake City, Utah, with him on the briefs), for defendant, The United States.

C. H. Johns, Jr., Assoc. Gen. Counsel, I. C. C., Washington, D. C. (Robert W. Ginnane, Gen. Counsel, Washington, D. C., with him on the briefs), for the defendant, Interstate Commerce Commission.

A. U. Miner, and L. W. Hobbs, Salt Lake City, Utah (Bryan P. Leverich, Salt Lake City, Utah, Elmer B. Collins, Omaha, Neb., Ernest P. Porter, Denver, Colo., Albert R. Bowen, Arthur A. Allen, Jr., and S. N. Cornwall, Salt Lake City, Utah, with them on the briefs, for intervening defendant carriers.

Before LEWIS, Circuit Judge, and CHRISTENSON and CHILSON, District Judges.

CHRISTENSON, District Judge.

Plaintiffs, pursuant to procedure prescribed in 28 U.S.C. §§ 1336, 1398, 2284 and 2321–2325, seek by this action to have set aside an order of the Interstate Commerce Commission which requires the railroads operating in Utah to increase, with certain exceptions, Utah intrastate freight rates in correspondence with increased interstate rates approved by the Commission in three nationwide revenue proceedings designated as Ex Parte Nos. 175, 196 and 206.

Two principal questions are presented for determination by this Court: (1) whether plaintiffs in the present proceedings have standing to question the validity of the findings and order of the Commission; and if so, (2) whether such findings and order are supported by substantial evidence.

Interstate freight rates were increased nationwide by the Interstate Commerce Commission in its Ex Parte No. 175, 284 I.C.C. 589, 280 I.C.C. 179, 281 I.C.C. 557. The Public Service Commission of Utah refused to allow similar increases on intrastate traffic. A Thirteenth Section investigation and hearing were conducted by the Interstate Commerce Commission upon which it issued a report, 297 I.C.C. 87, and later an order, directing that intrastate freight rates in Utah be increased to comport with increases granted interstate in Ex Parte No. 175. This order was sustained by a three-judge court in this district, Public Service Commission of Utah v. United States, D.C. Utah 1956, 146 F.Supp. 803. On May 19, 1958, the Supreme Court of the United States on appeal reversed. Public Service Commission of Utah v. United States, 1958, 356 U.S. 421, 78 S.Ct. 796, 2 L.Ed. 2d 886. Pursuant to the mandate, it was thereupon directed by this Court that the Commission's order be set aside and that the cause be remanded to the Interstate Commerce Commission for further proceedings in conformity with the Supreme Court's opinion.

In the meantime, in Ex Parte No. 196, 298 I.C.C. 279, and again in Ex Parte No. 206, 299 I.C.C. 429 and 300 I.C.C. 633, the Interstate Commerce Commission authorized additional rate increases on interstate traffic. A further Thirteenth Section investigation was instituted and administrative hearings were held. The Commission, on December 7, 1959, issued its report in the combined proceedings (Docket Nos. 31484 and 32253) in which it allowed the Public Service Commission of Utah thirty days in which to approve the increases held required to remove the burden upon in-

terstate commerce. Within this time the Public Service Commission of Utah notified the Interstate Commerce Commission that it would not enter such an order. The Utah Citizens Rate Association filed a petition for rehearing and reconsideration with the Interstate Commerce Commission. On March 17, 1960, the Commission issued its order, assailed in this proceeding, denying the petition for rehearing and reconsideration, and requiring the railroads to establish, effective May 13, 1960, the increased rates and charges for intrastate transportation within the State of Utah in accordance with the findings contained in its report.

Utah Citizens Rate Association initially brought this action as sole party plaintiff. Its capacity and standing to raise the issue here involved were questioned by the defendants. We granted leave to the Association to join as a party plaintiff, Structural Steel and Forge Company, a substantial shipper in Utah intrastate commerce. Defendants assert that even with this addition, the plaintiffs have no legal standing to maintain this action to set aside a general revenue order of the Commission.

■ Lack of statutory capacity to sue may disempower an association from maintaining such an action as this. Moffat Tunnel League v. United States, 1933, 289 U.S. 113, 53 S.Ct. 543, 77 L.Ed. 1069. Neither the general capacity to sue and be sued vested in the Utah Citizens Rate Association as a non-profit corporation by Utah Code Annotated 1953, §§ 16–6–1, 16–6–8, nor its statutory authorization to appear as a party or to intervene herein by virtue of 28 U.S.C. § 2323, affords standing for it to maintain an action to enjoin the Commission's order. Pittsburgh & W. Va. Ry. Co. v. United States, 1930, 281 U.S. 479, 50 S.Ct. 378, 74 L.Ed. 980, and Alexander Sprunt & Son, Inc. v. United States, 1930, 281 U.S. 249, 50 S.Ct. 315, 74 L.Ed. 832; cf. Chicago Junction Case, 1924, 264 U.S. 258, 267–268, 44 S.Ct. 317, 320, 68 L.Ed. 667, and Merchants' & Manufacturers' Traffic Ass'n of Sacramento v. United States, D.C., 231 F. 292, reversed

other grounds 1916, 242 U.S. 178, 37 S. Ct. 24, 61 L.Ed. 233. This is for the reason that it possesses no legal right or interest that would be injuriously affected by the order.

■ The reason and result, however, do not pertain to plaintiff Structural Steel and Forge Company. The distinction is clearly established in Alexander Sprunt & Son, Inc. v. United States, supra, in which the following cases allowing the maintainance of similar actions by those directly affected are distinguished by the court in connection with its denial of relief to parties with only an indirect or sentimental interest. United States v. Village of Hubbard, Ohio, 1925, 266 U.S. 474, 45 S.Ct. 160, 69 L.Ed. 389; Chicago Junction Case, supra; Skinner & Eddy Corporation v. United States, 1919, 249 U.S. 557, 39 S.Ct. 375, 63 L.Ed. 772; Interstate Commerce Commission v. Diffenbaugh, 1911, 222 U.S. 42, 32 S.Ct. 22, 56 L.Ed. 83. In the last cited cases standing was recognized on the part of shippers or others directly affected by the orders of the Commission. Compare Jersey City v. United States, D.C.N.J.1950, 101 F. Supp. 702, pressed upon us by the defendants, where Judge Maris, for the Court, pointed out that the plaintiff had not shown that any of its rights as a municipal corporation would be adversely affected by the Commission's order. Moreover, the foundational power to adopt and enforce statewide revenue orders affecting intrastate rates is involved. See Skinner & Eddy Corporation v. United States, supra, and the Utah rate case. To deny the standing of a shipper to be heard as to the validity of the Commission's order would do violence to the very base of constitutional government, the power of those directly aggrieved by claimed illegal action to be able to invoke judicial power against it.

We conclude that the plaintiff shipper has standing to maintain this action under the party in interest criterion of 28 U.S.C. § 2323 and under the person adversely affected or aggrieved standard of § 10(a) of the Administrative Pro-

cedures Act, 5 U.S.C.A. § 1009(a). See American Trucking Ass'ns v. United States, 1960, 364 U.S. 1, 80 S.Ct. 1570, 4 L.Ed.2d 1527; Garden City Floral v. United States, D.C.Mont.1956, 143 F. Supp. 609.

■ What already has been said largely disposes also of the question of the exhaustion of administrative remedies raised by the defendants. The so-called saving clause in the Commission's order,[1] asserted by the defendants as the appropriate and only remedy open to plaintiffs, is not applicable where the validity of the entire state-wide revenue order is called into question on jurisdictional grounds. In this position, as in our sustaining of the shippers standing to raise the question, the procedurally parallel case of Garden City Floral v. United States, supra, supports us, although we doubt that the Association itself would have standing to raise the question. The following cases primarily relied upon by defendant to demonstrate that "the plaintiffs have mistaken their remedy in the statutory scheme of railroad rate-making", and that they should await a more appropriate occasion to complain pursuant to the saving clause of the order, are not in point: Georgia Public Service Commission v. United States, 1931, 283 U.S. 765, 51 S.Ct. 619, 75 L.Ed. 1397; Algoma Coal & Coke Co. v. United States, D.C.Va.1935, 11 F. Supp. 487; and Koppers Company v. United States, D.C.Pa.1955, 132 F.Supp. 159. Algoma and Koppers involved merely permissive rates on selected commodities in interstate commerce. In Georgia, language quoted by the defendants does indeed indicate that the plaintiffs there would not be heard to attack a statewide order governing "a vast multitude of rates" (even though among the plaintiffs there was the Georgia Public Service Commission as well as intervening shippers). But the attack, so precedurally rejected, was upon the basis

of "possible uncertainty of application in isolated instances." Page 622 of 51 S.Ct. On the other grounds on which the order was assailed, including claimed insufficiency of the findings and evidence to show undue prejudice to interstate shippers by intrastate rates, no question was raised by the Court as to the standing of the plaintiffs. We thus reach the merits of the controversy.

The law of the case was established by the decision of the Supreme Court in Public Service Commission of Utah v. United States, supra. This decision remains controlling unless the state of the evidence before the Commission is now significantly different or the application of the Supreme Court's decision has been changed by the 1958 amendments to Section 13(4) of the Interstate Commerce Act, introduced by the Transportation Act of 1958, P.L. 85–625, 85th Cong., 49 U.S.C.A. § 13(4).

In reversing our prior decision, the Supreme Court said that the order of the Commission was vulnerable in the following respects:

1. As to the finding that the prevailing intrastate rates were abnormally low and failed to contribute a fair share of over-all revenue, there was no positive evidence before the Commission to indicate the relative costs and expenses of the intrastate as against interstate shipments.

2. There was no substantial evidence to support the finding that intrastate conditions were not more favorable than those incident to interstate transportation.

3. There was an absence in the findings of any indication that the Commission concerned itself with the revenues and conditions relative to intrastate passenger operations.

Shortly after the Supreme Court's decision, § 13(4) of the Act was amended

[1]. "The foregoing findings relate to Utah intrastate rates generally, and are without prejudice to reexamination, upon complaint or otherwise, as to the lawfulness of any individual Utah intrastate rate on any particular commodity."

by the addition of the portions italicized (49 U.S.C.A. § 13(4)):

"§ 13, par. (4) Duty of Commission where State regulations result in discrimination. Whenever in any such investigation the Commission, after full hearing, finds that any such rate, fare, charge, classification, regulation, or practice causes any undue or unreasonable advantage, preference, or prejudice as between persons or localities in intrastate commerce on the one hand and interstate or foreign commerce on the other hand, or any undue, unreasonable, or unjust discrimination against, *or undue burden on,* interstate or foreign commerce (*which the Commission may find without a separation of interstate and intrastate property, revenues, and expenses, and without considering in totality the operations or results thereof of any carrier, or group or groups of carriers wholly within any State*), which is hereby forbidden and declared to be unlawful, it shall prescribe the rate, fare, or charge, or the maximum or minimum, or maximum and minimum, thereafter to be charged, and the classification, regulation, or practice thereafter to be observed, in such manner as, in its judgment, will remove such advantage, preference, prejudice, discrimination, *or burden* * * *".

▮ The addition of the phrase, "or undue burden on" adds nothing to the existing law but amounts merely to a codification of language used in prior court decisions. As early as 1931 the Supreme Court in Georgia Public Service Commission v. United States, supra, used the phrase, "undue burden" interchangeably with, or in apposition to "unjust discrimination." 283 U.S. 765, 773, 51 S.Ct. 619, 622, 75 L.Ed. 1397.[2] And the Court in its 1958 decision in the Utah rate case stated, "Federal power exists in this area * * * when * * * those rates cast an undue burden on interstate commerce." Citing § 13(4) as it stood prior to the 1958 amendment. 356 U.S. 421, 425, 78 S.Ct. 796, 798, 2 L.Ed.2d 886.

▮ The parenthetical addition, relating to the method of determination by the Commission of undue burden or discrimination, is also partly a codification of prior decisional law. The phrase "which the Commission may find without a separation of interstate and intrastate property, revenues, and expenses," is merely permissive and reflects the procedure approved by the Supreme Court in such cases as King v. United States, 1952, 344 U.S. 254, 73 S.Ct. 259, 97 L.Ed. 301; Illinois Commerce Comm. v. United States, 1934, 292 U.S. 474, 54 S.Ct. 783, 78 L.Ed. 1371; and Georgia Public Service Commission v. United States, supra.

The next phrase, "without considering in totality the operations or results thereof of any carrier, or group or groups of carriers wholly within any State," could mean simply that in a revenue case such as this the Commission need not investigate specific rates as it would in a rate case. If understood in this way only a

---

2. We can find little basis in the decisions for doubt alluded to in the Conference Report referring to this part of the amendment. It was said: "The first amendment is the insertion of the words 'or undue burden on' in the present language describing the protection extended to interstate commerce. The addition of these words would serve to remove any doubt as to the Commission's power in instances where, upon appropriate records, it finds, as it has done in some section 13 proceedings, that the burden cast upon interstate commerce by intrastate rates or charges is undue and therefore unjustly discriminatory. Such findings have been questioned in the courts. This proposed change would thus afford the Commission additional statutory support needed in the administration of section 13." Conference Report No. 2274, July 24, 1958 (to accompany S. 3778), 1958 U.S. Code Cong. & Admin.News, 85th Cong., 2nd Sess., Vol. 2, p. 3484.

further codification of existing law would be involved. However, defendants contend that the amendment means in its wide ambit that the Commission may find despite any affirmative indication to the contrary that a segment of intrastate rates represents an ultimate "burden" upon interstate commerce without reference to the question of whether intrastate rates generally make it such a burden. Thus broadly interpreted, the amendment not only would overrule the Supreme Court's decision in Chicago, Milwaukee, St. P. & P. R. Co. v. State of Illinois, 1958, 355 U.S. 300, 78 S.Ct. 304, 2 L.Ed.2d 292, as reaffirmed in the Utah rate case, supra, but might permit the entire field of rate regulation to be federally arrogated by a separate treatment of segments unrelated to the net or total effects. The result could follow, as apprehended by plaintiffs here, that intrastate transportation generally would be required to subsidize interstate transportation as far as overall operations are concerned. Indeed, Mr. Justice Frankfurter, in his dissenting opinion in the Utah case recognized the problem and acknowledged the possible result (Page 459 of 356 U.S , page 816 of 78 S.Ct.):

"There is no apparent reason why a lower passenger deficit, like any other favorable circumstance surrounding intrastate transportation, would not justify a lower rate on intrastate freight traffic. If intrastate traffic taken as a whole, contributes its fair share to needed revenues and does not, from a revenue standpoint, discriminate against interstate commerce, what justification can there be for a finding of discrimination that is possible only because a segment of intrastate traffic is considered in isolation? Raising rates in this situation may have the effect of compelling intrastate commerce to contribute more than its fair share ."

But he added:

"It does not necessarily follow that the Commission should be required to make findings, supported by evidence in the record, that the intrastate passenger deficit is not lower than the interstate, or about the profitableness of, or circumstances surrounding, any segment of intrastate operations with which it is not immediately concerned. Indeed, the consequences that follow in the train of such a requirement demonstrate that it exalts formal consistency over sound policy. In the first place, if the Commission must determine the profitableness of intrastate passenger operations, it will of course be compelled to segregate revenues and costs attributable to intrastate and interstate traffic. Yet it is precisely this that in Illinois Commerce Commission v. United States, 292 U.S. 474 [54 S.Ct. 783, 78 L.Ed. 1371], and the King case we said, urged on by the difficulty of accurate allocation, was not required when interstate and intrastate traffic were mingled together."

We believe that a matter of procedure rather than any substantive change in the basic transportation policy of the Congress is involved. If this were not so, serious conceptual and constitutional, and further practical difficulties, would be invited. But there seems no reason why Congress cannot provide or clarify a procedural factor to render more practical the formula it has theretofore established, and which was, under existing law appropriately considered by the majority in the Utah rate case. In our opinion the amendment in this area does no more than to obviate the previously determined necessity of affirmative findings or evidence showing that the intrastate passenger deficit is not lower than the interstate or concerning the profitableness of, or circumstances surrounding, segments of intrastate operations with which the Commission was not immediately concerned. The legislative history of the amendment bolsters

this view.[3] There is nothing therein inconsistent with the further recognition that to rebut the prima facie presumption resulting from the amendment those who claim intrastate traffic as a whole is not discriminating against interstate commerce may show as an affirmative matter favorable aspects of intrastate operations. The dissenting opinion to this effect [4] referred to the then pending

3. Statement of the managers on the part of the House in the Conference Report, 1958 U.S.Code Cong. & Admin.News, 85th Cong., 2nd Sess., Vol. 2, p. 3484–85:

"The second amendment is the insertion of the following words: (which the Commission may find without a separation of interstate and intrastate property, revenues, and expenses and without considering in totality the operations or results thereof of any carrier, or group or groups of carriers wholly within any State).

"With this amendment, in order to exercise its jurisdiction over intrastate rates, the Commission still must find that such rates cause undue, unreasonable, or unjust discrimination against, or undue burden on interstate commerce. The amendment deals only with the nature of the evidence to support such a finding. By two recent decisions of the Supreme Court (Chicago, Milwaukee, St. Paul and Pacific Railroad Co. v. State of Illinois (January 13, 1958), 355 U.S. 300, 356 U.S. 906, 78 S.Ct. 304, 665 [2 L.Ed.2d 292, 573], and Public Service Commission of Utah v. United States (May 19, 1958), 356 U.S. 421, 78 S.Ct. 796, 2 L.Ed.2d 886), the Commission is required to consider the entire State operation, freight and passenger, in determining whether or not the intrastate freight rates were causing an undue revenue discrimination against interstate commerce. If the holdings in these cases mean that the required finding of—

"undue, unreasonable, or unjust discrimination against, or undue burden on, interstate or foreign commerce— can be made only in the light of the over-all statewide totality of a carrier's operating results derived from its entire body of rates applicable within the State, it would preclude the Commission from making such a finding on a showing of only the effect of the particular rate or rates in question. The Commission could not, under such an interpretation, continue to function effectively in removing unjust discrimination against interstate commerce caused by intrastate rates and charges.

"Rather than the amendment causing a change, it is the possible interpretation of these recent court decisions that would create a change in the present regulatory scheme. As stated in the dissenting opinion (of four justices) in the Utah case, a consequence of the decisions—

"would be a radical, and in all likelihood unworkable, change in the way the Commission has administered the provisions of section 13(4) for over 35 years."

4. Dissenting Opinion, at page 462 of 356 U.S., at page 818 of 78 S.Ct.:

"Of course, those who contend that intrastate traffic as a whole is not discriminating against interstate traffic may come forward and show, as they may in respect to any claimed dissimilarity of conditions surrounding interstate and intrastate traffic, some favorable aspect of intrastate operations that the Commission should take into account. In the absence of such a showing, however, the Commission should be able to assume that discrimination shown to exist as to the particular segments of intrastate and interstate traffic with which the § 13(4) proceeding is concerned is not offset by other conditions that this Court speculates may affect wholly different segments of intrastate commerce. The record in the present case is devoid of the remotest suggestion that the Utah intrastate passenger deficit is any less than the interstate passenger deficit, and the Commission should not be required to seek out such evidence itself and make findings beyond those it has already made.

"This is a solution that accommodates imponderables and does not demand precision where the nature of the subject can yield only approximations. It is a solution responsive to the difficult regulatory problems posed by § 13(4). Embedded in it are some of the advantages in simplicity of administration that would follow if this Court had expanded, as it might well have done, the doctrine of discrimination against persons or localities to permit state-wide orders protecting all interstate shippers against discrimination without reference to revenues. At the same time, there remains an opportunity for intrastate shippers or a state commission to show to the Interstate Commerce Commission's satis-

bill couched in the same language as that later adopted in the Transportation Act of 1958 [5], and the Committee, considering the pending legislation, cited the dissenting opinion with apparent approval. Mr. Justice Frankfurter's position on the point therefore should be accepted as persuasive.

■ As thus interpreted, we perceive no constitutional problem. And we must conclude that the absence in the findings of an indication that the Commission concerned itself with the revenues and conditions relative to intrastate passenger operations does not render the present order vulnerable. There was no affirmative showing by the plaintiffs, or at all, that such revenues and conditions would have altered the burden upon interstate commerce found to have existed from a consideration by the Commission of revenues and conditions pertaining to the freight component.

■ With reference to the other two points on which the Supreme Court in the Utah rate case held the evidence to be insufficient, we have carefully examined the record before the Commission and believe that the prior deficiencies have been corrected within the law of the case. The point most persistently urged by plaintiffs is that nowhere in the evidence introduced by the railroads is there any evidence to show that terminal costs bear as heavily on intrastate traffic as they do on interstate traffic. It is argued that the cost of maintaining and operating terminal facilities constitutes an important part of railroad expenses, citing Des Moines & Central Iowa v. Chicago, Burlington and Quincy Railroad Company, et al., 232 I.C.C. 489, and that all of the evidence going to similarity of conditions is concerned with the question of over-the-road costs.

The railroads' response is that interstate terminal costs could not possibly be higher than intrastate terminal costs within Utah; that the latter traffic must of necessity have two terminal costs (origin and destination) assigned to it; that interstate traffic would have only one if it originated or terminated in Utah; and bridge traffic moving across Utah would have none at all or, at most, one (where switched between railroads within the State).

Beyond these latter circumstances, and the general evidence tending to show that conditions affecting intrastate traffic were not more favorable than those pertaining to interstate traffic, density of traffic studies are now more convincing in favor of the carriers' position. Additional specific data and new comparative ratios have been presented by them which include terminal costs in the evaluated factors. And the record heretofore held to be deficient has been otherwise strengthened. In combination, these considerations have led us to conclude that the Commission's present order is not vulnerable to this focused attack, nor to the other objections now urged by plaintiffs.

Other matters urged in the briefs are deemed not sufficient to require special discussion here or to impair the action of the Commission.

We conclude that the plaintiffs' complaint should be, and it is hereby, dismissed. The defendant carriers are released from the protective order with respect to the impounding of revenue from the disputed increases. Defendants are awarded their taxable costs herein.

LEWIS, Circuit Judge (concurring).

I am in complete agreement with the views expressed in my brother CHRISTENSON's opinion relating to the merits of this case and with the result. However, I do not share the confidence expressed that the action may be main-

---

faction the existence of specific factors favoring intrastate traffic in general that should not wisely be ignored. It is the solution that seems best designed to achieve the purposes of the Act without interposing insurmountable obstacles to the effective regulation of the national transportation system, the responsibility for which rests, after all, predominantly with the Interstate Commerce Commission."

5. See footnote 3, and pages 460–461 of 356 U.S., and page 817 of 78 S.Ct.

tained at the instance of a single shipper and deem it desirable to reserve an expression of my views upon that important question until such time as the point may be determinative.

### On Plaintiffs' Motion to Alter or Amend Judgment

Before LEWIS, Circuit Judge, and CHRISTENSON and CHILSON, District Judges.

PER CURIAM.

The plaintiffs have filed a timely motion to alter or amend the judgment contained in our memorandum decision herein (a) to grant judgment to the plaintiffs as prayed for in the complaint, setting aside and declaring null and void the order of the Interstate Commerce Commission dated March 17, 1960, in I.C.C. Docket Nos. 31484 and 32253, and (b) to require the defendants to hold intact moneys heretofore impounded under the order of this court in this action, dated May 11, 1960, until such time as the parties may have exhausted their remedies by appeal or until the time for taking an appeal shall have expired.

Memoranda in support of, and in resistence to, this motion have been filed by counsel for the respective parties; and on December 20, 1960, they stipulated in writing that the motion could be deemed submitted upon these memoranda and without oral argument.

On May 11, 1960, upon plaintiffs' application for a temporary injunction and its denial, but as a part of the order of denial, this Court said:

"It is further ordered, however, that the intervening railroads * * * shall keep separate the increased amounts of moneys received by them through the application of the increased freight rates involved herein pending the determination on the merits by the Court of the question of a permanent injunction against the enforcement of the Interstate Commerce Commission order allowing such increases, and shall impound said moneys in separate bank accounts of the respective railroads to be accounted for and held subject to the order of this Court pending final determination of all matters involved herein, including final decision of the United States Supreme Court in the event of an appeal, such funds thereafter to be distributed to such shippers as may be determined by this Court to be entitled thereto in the event final judgment be such as to vacate and annul the said order or any subsequent order of the Interstate Commerce Commission insofar as they increase intrastate freight rates within the State of Utah here involved, otherwise to be returned to said railroads.

"The Court hereby retains jurisdiction for the purpose of making any necessary orders with respect to refund to shippers or to direct that impounded moneys be returned to the railroads."

The foregoing provision was based substantially upon the proposal of the railroads which they suggested as an alternative to the Court's granting the temporary restraining order prayed for by the plaintiffs.

In our decision and judgment we said:

"We conclude that the plaintiffs' complaint should be, and it is hereby, dismissed. The defendant carriers are released from the protective order with respect to the impounding of revenue from the disputed increases * * * *"

This disposition was not intended to, and could not properly, alter the previous order which was based upon the railroad's proposal, with respect to the moneys impounded up to the date of the Court's judgment. To remove uncertainty in this respect, the last paragraph of the Court's decision and judgment is amended to read as follows:

"We conclude that the plaintiffs' complaint should be, and it is hereby, dismissed upon the following conditions. The defendant carriers are released from the protective order with respect to im-

pounding future revenues from disputed increases. The funds from such increases impounded pursuant to the order of the Court dated May 11, 1960, and received prior to November 23, 1960, the date of the filing of the judgment herein, shall continue to be held and impounded by said railroads in separate bank accounts and shall be accounted for and held subject to the order of this Court pending final determination of all matters involved herein including final decision of the United States Supreme Court in the event of an appeal, such funds thereafter to be distributed to such shippers as may be determined by this Court to be entitled thereto in the event final judgment be such as to vacate and annul the said order or any subsequent order of the Interstate Commerce Commission insofar as it increases the intrastate freight rates here involved within the State of Utah, otherwise to be returned to said railroads. Defendants are awarded their taxable costs herein."

Except as above specifically provided, the Court's decision and judgment as heretofore filed shall be and remain in full force and effect, and as so modified shall constitute the judgment of this Court.

■ Some question has arisen as to the power of this court to make the foregoing correction by reason of the filing by the plaintiffs of notice of appeal from our original judgment after the filing of the motion to alter and amend the judgment. It is generally considered that an appeal when properly perfected divests the trial court of jurisdiction of the case. But this principle has not been extended to preclude the correction of the record so that the proceedings as they actually occurred are properly set forth. 3 Am. Jur. Appeal and Error, § 530, p. 193; Rule 60(a) F.R.Civ.Proc., 28 U.S.C.; see Greenberg v. Arsenal Bldg. Corp., 2 Cir., 1944, 144 F.2d 292 (provision for interest thought to be implicit in judgment could

be added after appeal), reversed on other grounds 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296. In Hovey v. McDonald, 1883, 109 U.S. 150, 3 S.Ct. 136, 141, 27 L.Ed. 888, the Supreme Court said that a correction of the form of a decree after appeal by adding a direction to a receiver to pay over money in his hands which he had been restrained from paying over by an injunction during the pendency of the suit was not invalid, because that was a "thing of course", in view of the record in the case. And about the same may be said of the foregoing amendment. If the present motion to amend the court's order in respect to impounded funds is regarded as a motion under Rule 60(a), supra, as well it may be, our action would come within its express provision that such amendment can be made, notwithstanding the pendency of an appeal, at any time prior to the docketing of the case on appeal. Since the record on appeal has not been certified, it is apparent that the case has not been docketed. See Supreme Court Rule 13, 28 U.S.C. Moreover, the continued protection to the plaintiffs, pending appeal, in accordance with the pre-existing direction of the court may be considered in the nature of a stay within the spirit of the Revised Rules of the Supreme Court, Rules 18 and 51, subd. 2 which encourage stay applications to be made in the first instance to the courts below. See Cumberland Tel. & Tel. Co. v. Louisiana Public Service Comm., 1922, 260 U.S. 212, 43 S.Ct. 75, 67 L.Ed. 217, where only one Judge signed the order, but the power of the lower court otherwise was not denied. The fact that the railroads themselves initially proposed this very continuing provision may be deemed a waiver of a supersedeas bond.

Finally, it seems doubtful that our judgment was appealable because of lack of finality in view of the present intervening motion. See Fed.R.Civ.Proc. 59(e), 73; see also 28 U.S.C. § 2284(5); cf. 28 U.S.C. § 1253.